## FRENCH v. WAR CONTRACTS PRICE ADJUSTMENT BOARD.

### No. 12449.

United States Court of Appeals
Ninth Circuit.

May 23, 1950.

George Bouchard, Los Angeles, Cal., for petitioner.

H. G. Morison, Asst. Atty. Gen., Morton Liftin, Atty. Dept. of Justice, Washington, D. C. (Newell A. Clapp, Paul A. Sweeney, and John F. Wolf, Attys. Dept. of Justice, all of Washington, D. C., of counsel), for respondent.

Before STEPHENS, ORR and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

Feeling himself aggrieved, Bert French, a resident of San Pedro, California, within the Ninth Judicial Circuit, has attempted to have this court review a renegotiation decision of the Tax Court holding that he had enjoyed excess profits upon government supplies to the navy for the year 1943. His points are (1) that the service for which he was paid is not covered by the Renegotiation Act, and (2) that he realized no excessive profits. We quote the renegotiation statute in part in the margin.[1]

---

1. The pertinent portion of Section 403(e), 50 U.S.C.A.Appendix, § 1191(e), provides as follows:

"(e) (1)  Any contractor or subcontractor aggrieved by an order of the Board determining the amount of excessive profits received or accrued by such contractor or subcontractor may, within ninety days (not counting Sunday or a legal holiday in the District of Columbia as the last day) after the mailing of the notice of such order under subsection (c)(1), file a petition with The Tax Court of the United States for a redetermination thereof. Upon such filing such court shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits received or accrued by the contractor or subcontractor, and such determination shall not be reviewed or redetermined by any court or agency. The court may determine as the amount of excessive profits an amount either less than, equal to, or greater than that determined by the Board. A proceeding before the Tax Court to finally determine the amount, if any, of excessive profits shall not be treated as a proceeding to review the determination of the Board, but shall be treated as a proceeding de novo. For the purposes of this subsection the court shall have the same powers and duties, insofar as applicable, in respect of the contractor, the subcontractor, the Board and the Secretary, and in respect of the attendance of witnesses and the production of papers, notice of hearings, hearings before divisions, review by the Tax Court of decisions of divisions, stenographic reporting, and reports of proceedings, as such court has under

The respondent Board has presented a "Motion to Dismiss Petition for Review" claiming (1) that there is no appeal or review provided for the Tax Court's renegotiation decisions and therefore this court has no jurisdiction in the premises, and (2) assuming that this court has jurisdiction it is not the court of proper venue for this proceeding. French resists the motion and takes the negative on both claims.

The United States Court of Appeals for the District of Columbia has decided the jurisdictional point contrary to respondent's view. See United States Electrical Motors v. Jones, 1946, 80 U.S.App.D.C., 329, 153 F.2d 134, and Blanchard Machine Co. v. R.F.C., D.C.Cir., 1949, 177 F.2d 727. In the latter case the court followed the former case although the point was stipulated out of the case. The point arises from the wording emphasized by us in the following sentence which we quote from the Renegotiation Act, 50 U.S.C.A.Appendix, § 1911: "Upon such filing [filing petition for review of the Board's determination] such court [the Tax Court] shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits received or accrued by the contractor or subcontractor, *and such determination shall not be reviewed or redetermined by any court or agency.*"

The court in the cited cases thought the clause of the act which denies "review" and "redetermination" "by any court or agency" refers back to "amount" or "amount, if any" with its meaning limited to the sum found to be excessive profits and does not prohibit review or redetermination on any other basis of error. On the other hand, the board's contention, in effect, is that the specific withholding of every type of review or redetermination by any court or agency goes not only to the accuracy of the figure found as the total of the excessive profits found but to the determination as a judgment, called an order in the Act.

We think the Act prohibits the review absolutely because, (1) the Act affirm-atively so provides, (2) if it does not so provide there is no provision in the Act for a review, (3) there is nothing in the provisions of the Tax Court statute which authorizes review or appeal or renegotiation cases from the Tax Court or any other court to the United States Courts of Appeals, (4) there is no general statute authorizing such review. As will be seen the venue provided for the review of Tax Court decisions by the United States Courts of Appeals does not fit the review of renegotiation cases and this fact supports the view that it was not the congressional intent to authorize a review, and, as well, the view that this court does not afford the proper venue for the review sought if, perchance it may be held that a review is in some wise authorized.

It is worthy of note at the beginning of our reasoning to our conclusions expressed in the last above paragraph, that the District of Columbia court in holding that it had jurisdiction to entertain an appeal on a renegotiation case had no difficulty in holding that it had no power to change the "amount, if any," found by the Tax Court. We see in this splinter appeal something less than consistency for it seems to say that even if a large part of the coverage taken as the Tax Court's basis for the "amount" found can be ruled out on appeal, nevertheless the "amount" of excessive profits "if any" cannot be changed or corrected.

Certain it is there is no provision for review or appeal in the Act and the District of Columbia court found its appellate jurisdiction in Section 1141(a), Internal Revenue Code, 26 U.S.C.A. § 1141(a), which at the time the United States Electrical Motors v. Jones case, supra, was decided was in part as follows: "The circuit courts of appeals [now the United States Courts of Appeals] and the United States Court of Appeals for the District of Columbia shall have exclusive jurisdiction to review the decisions of the Board [now the Tax Court] * * *." There are exceptions to this paragraph but none of them are

sections 1110, 1111, 1113, 1114, 1115(a), 1116, 1117(a), 1118, 1120, and 1121 of the Internal Revenue Code in the case of a proceeding to redetermine a deficiency. * * *" (Emphasis ours.)

pertinent here. Amendments to the section are immaterial here. Ten sections of the Internal Revenue Code are made applicable to a review by the Tax Court but this section is not included. See Note 1.

The District of Columbia court says, in the nature of make-weight argument 153 F.2d at page 137: "It would, we think, require clear language to indicate that Congress intended that any tribunal should have unreviewable authority to determine its own jurisdiction" and adds by way of note: "It is true, as respondents urge, that the provisions of the Internal Revenue Code relating to venue upon appeal * * are in terms unfitted to a renegotiation. But we do not believe that the awkwardness of venue provisions should nullify the substantive right of appeal."[2]

With respect to the shortcomings of the venue provisions when attempted to be applied to appeals of renegotiation actions, it rather appeals to us that they show up, not from "awkwardness", but from the fact that the whole provision for appeal from the Tax Court including venue, having been enacted long before renegotiation was thought of, was fashioned solely for appeal of tax cases. We think the lack of appropriate venue provisions in the Act adds weight to the view that the affirmative provision in the renegotiation act prohibiting review applies to all that the Tax Court does in arriving at its judgment rather than just that court's bookkeeping or accountancy. Expressed in another way, the venue provisions were never made to fit a review or appeal as to renegotiation actions because there never was a "substantive right of appeal" conferred upon the Courts of Appeals to "nullify".[3]

Our conclusions are strongly buttressed, we think, by the reasoning in the opinion and conclusions reached by the Supreme Court in Macauley v. Waterman Steamship Corporation, 1946, 327 U.S. 540, at 544, 66 S.Ct. 712, at page 714, 90 L.Ed. 839. The board having jurisdiction to renegotiate under the renegotiation act was about to begin hearings which involved the Waterman Steamship Corporation when that corporation brought suit in the district court for a declaratory judgment alleging that the contracts proposed to be renegotiated were not subject to or covered by the Act, and prayed for an injunction against the board. The district court dismissed the case because the complainant had not exhausted its administrative remedies provided in the Act. The Supreme Court affirmed, holding that the complainant must meet the procedure of the board and must abide by the provision of the Act that the Tax Court "shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits * * *." The court went on to say, " * * * the Act provides that the Tax Court 'shall have exclusive jurisdiction, by order, to finally determine the amount, if any, of such excessive profits * * *.' Contrary to respondent's contention that this language limits the Tax Court's jurisdiction so as not to include the power to decide questions of coverage, we think the

2. We quote from respondent's brief on the motion: "Furthermore, had Congress intended the courts of appeals review provisions of the Internal Revenue Code to apply to Tax Court renegotiation decisions, adaptations in the venue provisions would have been made. Section 1141(b) permits review in the court of appeals 'in which is located the collector's office to which was made the return of the tax in respect of which the liability arises or, if no return was made, then by the United States Court of Appeals for the District of Columbia,' or in any court of appeals 'which may be designated by the Commissioner and the taxpayer by stipulation in writing.' Since in re-negotiation there is no action by any 'Collector' and no 'return of the tax in respect of which the liability arises' and no 'Commissioner' and no 'Taxpayer', these venue provisions are entirely inapplicable to renegotiation."

See Note 5, page 137, 153 F.2d, as to venue.

3. The Congress was not careless in the matter of affirmatively providing for the court in respect of other details. When the board has renegotiated a contract and further proceedings have not been requested the board is specifically authorized to bring suit in an "appropriate court of the United States." Title 50 U.S.C.A.Appendix, § 1191(c)(2).

language shows that the Tax Court has such power. For a decision as to what are and are not negotiable contracts is an essential part in determining the amount of a contractor's excessive profits." The language just quoted unquestionably includes in the Tax Court's determination of the *amount* of excessive profits the result of considering both law and fact. It leaves little or no room for doubting that the grant to the Tax Court of exclusive jurisdiction to "finally determine that amount, if any," refers to the Tax Court's whole decision as an indivisible judgment or order and not just solely to the accounting involved, and this construction is consistent with the expression immediately following in the opinion, "and such determination shall not be reviewed or redetermined by any court or agency."

The author of the Macauley opinion commented briefly on the legislative history of the act and in pursuing this source of understanding further, all reasonable doubt vanishes.

The report of the committee to the House of Representatives (H.R. 871, 78 Cong.,

1st Sess., pp. 76-77) comments upon the de novo power of the Tax Court in redetermination cases and says: "That Court [the Tax Court] will have *exclusive jurisdiction,* by an order, to make *final determination* as to *whether excessive profits have been received* or accrued, or whether a fair price has been determined, and the *Tax Court's determination may not be reviewed* or *redetermined* by any other *court* or *agency.*" [Emphasis ours] In the course of the House Committee consideration of its bill the matter of reviewability of the Tax Court's decisions was discussed with the proposal that the decisions should be reviewable by the Court of Appeals but no amendments accomplishing such end were adopted.[4] It seems clear that the committee fully understood that no appeal was provided for and that such was the committee's intention. We set out by way of footnote 5 some quotations from two cases decided by the Supreme Court together with our comment which we think are helpful as background of the Act and enlightening as to its importance and the prime necessity for limiting litigation on its subject matter.[5]

4. Mr. E. Alvord, in presenting the proposal that "As in tax cases, disputes arising out of renegotiation determinations should have benefit of judicial review beyond the Tax Court", said: [Hearings of the Committee on Ways and Means, House of Representatives, 79th Congress, 1st Sess., on H.R. 2628 p. 222]

"The Revenue Act of 1943 states specifically that the provisions relating to review by the appropriate circuit court of appeals of a decision of The Tax Court do not apply to a decision on a renegotiation case. This question was settled in conference. I think some of the conferees thought otherwise, but the statute is very specific, as I read it, that there is no appeal on a question of law from The Tax Court of the United States. I need not remind you that in tax cases your appeal is only with respect to questions of law decided by The Tax Court of the United States."

5. At the beginning of the opinion in the leading case of Lichter v. United States, 1948, 334 U.S. 742, at 745, et seq., 68 S.Ct. 1294, 1297, 92 L.Ed. 1694, a case in which Mr. Justice Burton analyzed the Renegotiation Act in relation to its

constitutionality, he stressed the high importance of the Act as follows: "The Renegotiation Act, in time of crisis, presented to this nation a new legislative solution of a major phase of the problem of national defense against world-wide aggression. Through its contribution to our production program it sought to enable us to take the leading part in winning World War II on an unprecedented scale of total global warfare without abandoning our traditional faith in and reliance upon private enterprise and individual initiative devoted to the public welfare."

Later on in the same opinion, 334 U. S. at page 755, 68 S.Ct. at page 1301, 92 L.Ed. 1694, the Justice wrote: "With the advent of such warfare, mobilized property in the form of equipment and supplies became as essential as mobilized manpower."

Of course such property had to be compensated for and it is patent that the taking had to be rather precipitous and agreements had to be entered into with no extended bargaining negotiations, and therefore Congress provided a scheme whereby excessive war profits would be eliminated. The extent of the transactions was monumental and the economy of

It is nothing passing strange that appeal is prohibited from the Tax Court's decision. Actually there is more than the ordinary appeal provided. Ordinarily there is no de novo appeal or review from a decision of a board after a hearing because the reviewing tribunal must accept the factual finding if there is substantial evidence to support it. The evidence received by a board need not conform to common law rules and an appellate court cannot reverse as it can in an appeal from a judge's decision if, upon viewing the whole case, it is convinced that a mistake has been made. In place of an ordinary review on the law alone from an administrative board or from a district judge to an appellate court, in renegotiation cases the Congress endowed the Tax Court with the full power to adjudge, de novo, upon evidence taken by it, all of the issues both of law and of fact. And having provided for the board's hearing and for this broad protection against any miscarriage of justice, Congress provided that the litigation should end with it.[6] That the war exigen-

---

the Government and those supplying war materials required that disputes should be settled by some one definite, practicable and speedy plan.

In an opinion written by Mr. Justice Rutledge, Aircraft & Diesel Corp. v. Hirsch, 1947, 331 U.S. 752, at 767 et seq., 67 S.Ct. 1493, at page 1500, 91 L. Ed. 1796, he said: "The very purpose of providing either an exclusive or an initial and preliminary administrative determination is to secure the administrative judgment either, in the one case, in substitution for judicial decision or, in the other, as foundation for or perchance to make unnecessary later judicial proceedings. Where Congress has clearly commanded that administrative judgment be taken initially or exclusively, the courts have no lawful function to anticipate the administrative decision with their own, whether or not when it has been rendered they may intervene either in presumed accordance with Congress' will or because, for constitutional reasons, its will to exclude them has been exerted in an invalid manner. To do this not only would contravene the will of Congress as a matter of restricting or deferring judicial action. It would nullify the congressional objects in providing the administrative determination. In this case these include securing uniformity of administrative policy and disposition, expertness of judgment, and finality in determination, at least of those things which Congress intended to and could commit to such agencies for final decision." * * "Indeed the Board was created in large part to bring under a single aegis the last stage of informal renegotiation before the Tax Court action, in order thus to secure as nearly as possible uniform policy and administration of renegotiation problems. This policy was followed and reinforced in the provision for Tax Court redetermination [de novo]. And that procedure was chosen deliberately in preference to judicial review in the Court of Claims or elsewhere, primarily because of the Tax Court's expertness in fiscal matters analogous to those arising in connection with renegotiation problems, as well as its essentially judicial procedures and experience." * * * "It is equally clear that Congress intended to endow the Tax Court's decisions with a very large degree of finality, as appears from the very terms of § 403(e)(1), from the whole structure of the Act, and from the legislative history."

6. It is also more than "a straw in the wind" that the renegotiation section of the Internal Revenue Code provides for the determination of the excessive profits by the board and if the contractor does not petition the Tax Court for a review within a limited time "such order shall be final and conclusive and shall not be subject to review or redetermination by any court or other agency." § 1191(c) (1). In the same section, subsection (e) (1), the Act refers to the order of the Tax Court after hearing and practically the same language is used, " * * * such determination shall not be reviewed or redetermined by any court or agency." The provision for review of the board's determination is followed immediately by the authorization for the Tax Court to review by a de novo hearing. But there is no mention of a further review by the United States Courts of Appeals. It seems reasonable to conclude that the Congress meant that when the time expired for filing with the Tax Court without action, the board's determination is final; and that when review by the Tax Court has been taken and that body has acted, its determination is likewise final. Had Congress intended a further review in the latter instance it seems it would have said so as it did in the former instance. If Congress had intended such a review, it would have made the general authorization for the review of Tax Court decisions applicable as it did other sections of the Internal Revenue Code.

cies of the situation required speedy final decisions cannot be denied.

 Of course, the decision of the Tax Court may be wrong but absolute certainty as to the right or wrong of any decision is not and could not be required of any court. And that there is no constitutional right of appeal is well phrased in Luckenbach Steamship Co. v. United States, 1926, 272 U.S. 533 at 536, 47 S.Ct. 186, at 187, 71 L. Ed. 394: " * * * the well-settled rule applies that an appellate review is not essential to due process of law, but is a matter of grace." (In the interest of brevity we refrain from quoting at length from this case, though it may be read in full with profit.) But with no appeal or review from the trial court the litigant is not prevented from raising his constitutional points for decision in the courts of the land to the final decision of the United States Supreme Court. The Tax Court's decision goes back to the board which is given the power by the Act to bring suit in federal court for enforcement. See 50 U.S.C.A.Appendix, § 1191(c) (2). The contractor respondent may then present his constitutional points and press them for decision to the Supreme Court. Practically this was done in Lichter v. United States, 1948, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694. Therein three cases are grouped for opinion. The complainants in separate matters had declined to ask review by the Tax Court after renegotiation had before the board. The board brought suit in district courts and the defense set up was unconstitutionality of the Act. The Supreme Court affirmed the lower court's holdings that there was no lack of due process and the Act was constitutional on its face. The same principles would have been applied had the suit followed determination by the Tax Court. It may be argued that the right to present constitutional questions in defense to the board's action for enforcement itself extends litigation. To a degree it does but this fact presents no serious situation because litigation on the constitutional question will hardly be pressed after the Lichter decision. Witness the fact that in this very case the constitutional question [constitutionality of the Act on its face] has been withdrawn because of the Lichter decision.

The petitioner, here, (French) claims the Act does not cover the subject matter of the renegotiation had as to his profits. The district courts are open to him to contest this point with the government. See the recent case of United States v. Bonnell, 9 Cir., 180 F.2d 145.

 We do not treat the matter of venue at length, but from what we have already said we think it is clear that there is nothing in the law which fixes venue in this court.

We are convinced that no appeal from the Tax Court is provided and that the motion to dismiss must be granted, and it is so ordered.

Motion to dismiss granted.