## RICHFIELD OIL CORP. v. UNITED STATES et al.

### No. 13385.

United States Court of Appeals, Ninth Circuit.

Oct. 21, 1953.

David Guntert, Los Angeles, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Keith R. Ferguson, Special Asst. to the Atty. Gen., San Francisco, Cal., for appellee.

Before STEPHENS, HEALY and POPE, Circuit Judges.

POPE, Circuit Judge.

Appellant Richfield, plaintiff below, brought this action assertedly under the

Administrative Procedure Act,[1] in which it complains of a long series of acts by the Maritime Administration of the Department of Commerce, and by the United States Maritime Commission and the War Shipping Administration, agencies to whose functions the Maritime Administration has succeeded. For the sake of simplicity, we shall here speak of all three agencies as one, referring to it as the Maritime agency.

Richfield characterizes its action as one brought for the purpose of obtaining judicial review of agency action by which it claims to have been aggrieved pursuant to section 10 of the Act mentioned.[2] The complaint named as defendants the United States, the Department of Commerce, the Maritime Administration, and L. C. Fleming, the latter's Pacific Coast Director.

The district court sustained defendants' motion to dismiss,[3] and entered judgment dismissing the action, from which this appeal is taken.

The story related in the complaint begins in January, 1942, when Richfield not only owned, but had possession of seven tank steamships. Between that date and April 19, 1942, the Maritime agency notified Richfield that it desired to obtain delivery and use of these vessels under the time Charter Parties then tendered to Richfield for execution. It is alleged that plaintiff was informed by the agency "that failure to accept the Charter Party tendered would cause the vessel to be requisitioned". Plaintiff signed. The initial agreements provided for a time charter rate ranging from $4.50 to $3.25 per ton per month calculated on the vessel's deadweight capacity, but also provided: "The rate of hire specified * * * shall be subject to revision from time to time during the currency of this charter in accordance with any appropriate rate under any General Order of the Charterer estab-

lishing fair and reasonable rates of time charter hire applicable to tank vessels, such revision to be effective on the effective date of any such General Order."

The complaint then goes on to enumerate the many instances in which the Maritime agency proceeded to revise the charter rate downward or otherwise alter the charter terms to the disadvantage of Richfield. In some instances, it is alleged, the new time charter rate was altered by the issuance of a general order. On other occasions the general orders issued prescribed new forms of time charter for tank steamships. At other times Richfield was requested to execute addenda to the current charters. The complaint discloses that although protesting these alterations in rates and in the charters, Richfield without exception executed the tendered documents. The complaint alleges that this was done by Richfield because of the economic pressure exerted against it. A typical allegation, in substance repeated throughout the complaint, is the one that "On August 19, 1942, plaintiff, although objecting strenuously to the severe roll-back of charter rates, yielded to the economic pressure of the War Shipping Administration and under duress executed the tendered requisition time charters."

The complaint further alleges that on December 6, 1944, the Maritime agency issued an order prescribing a new addendum to the charters which was designed to compose all pending disputes between Richfield and the agency; that Richfield was given assurance by the agency at that time that its claims for certain overtime bonuses and extra wages paid to officers and men on the vessels, and which claims had been audited and approved, would not be changed; and that thereupon Richfield executed this addendum although, it is said, "under duress". It is also alleged that it was understood that in the future overtime allowances would

1. 5 U.S.C.A. §§ 1001–1011.

2. 5 U.S.C.A. § 1009.

3. Dismissal was sought on the ground that the action was barred by limitations, for want of jurisdiction of the defendants, either at all, or within the Northern District of California, where the action was brought, and for failure of the complaint to state a claim.

be made "on the basis of the then audited accounts of plaintiff."

The complaint shows that Richfield's profits under the charters were subjected to renegotiation. Attached as an exhibit to the complaint is a renegotiation contract which was executed by Richfield and which recites that it was made pursuant to the Renegotiation Act, 50 U.S.C.A.Appendix, § 1191; that Richfield had realized excessive profits for the year 1942 in the amount of $100,000, and after making allowances for taxes paid upon that sum, provided that Richfield should pay the Government the sum of $60,000. This agreement was executed "as of the 11th day of September, 1944". The complaint asserts that the Renegotiation Act was unconstitutional when applied to such time charters "because it would further reduce the compensation of this plaintiff (which was already by arbitrary action of the defendant agencies and their predecessors below just compensation to which this plaintiff is entitled under and pursuant to the provisions of the Constitution of the United States), this plaintiff nevertheless acceded to defendants' demands and under economic duress paid or credited said alleged excessive profits to the defendant, the United States of America."

Finally, it is alleged that the defendant Agency notwithstanding its contrary agreements, has continued to audit and reaudit the books and accounts relating to the charters in question and now alleges that Richfield is indebted to the United States in a sum exceeding $75,-000. This claimed indebtedness represents the amount of certain overtime compensation paid to officers and crew of the vessels in consequence of certain services which had to be rendered because of regulations established by the Coast Guard. When Richfield made the adjustment called for by the renegotiation contract, the excess profits therein stipulated were arrived at on the assumption that this overtime was properly charged to the United States.

Richfield further states that it petitioned the Maritime agency for relief on the ground not only that these sums had been properly charged and then audited and approved, but that it had "paid alleged excessive profits on the basis of such audited books and accounts, and had the charges not been made against the Charterer, (as the defendants and each of them now allege such charges should not have been made), then in that event the amounts of profits so eliminated would have been reduced by the sum of such alleged improper charges"; that if Richfield is required to pay that sum now alleged to be due, its net result would be the reopening of the renegotiation contract notwithstanding the agency admits there is no fraud, malfeasance or wilful misrepresentation on the part of Richfield. (The renegotiation contract recites that it shall be a final and conclusive determination of the excessive profits subject to the right of the Secretary of Navy to reopen "upon a showing of fraud or malfeasance or wilful misrepresentation.") Richfield further complains that the Maritime Agency now proposes to refer the claim for the refund mentioned to the General Accounting Office in order that recovery of that sum may be effected by offsetting this amount against sums due Richfield for petroleum products being furnished by it to the United States.

In general the complaint appears to seek to establish the following claims of Richfield: (1) That notwithstanding the execution of the various charter documents, and the determination by the agency from time to time of the rates to be paid for the use of vessels, Richfield is entitled now to recover "the just compensation guaranteed by the Fifth Amendment" which it alleges to be the sum of $4.50 per ton of deadweight capacity per month; (2) that the renegotiation of the charter operations was an unconstitutional application of the Renegotiation Act and hence Richfield should recover the amount it paid pursuant to that agreement; (3) that Richfield is entitled to injunction relief against the effort of the Maritime agency to demand repayment of the overtime allowances or to offset them through the General Ac-

counting Office against Richfield's current claims for payments for petroleum products sold and delivered to the United States. The prayer was for declaratory relief establishing and declaring such rights to be in the plaintiff, and that the Maritime agency be enjoined from undertaking the offset mentioned above.

In dismissing the action the district court held that the dispute between the parties disclosed by the complaint arises out of a series of time charters and that such disputes give rise to "maritime causes" only under the doctrine of Matson Navigation Co. v. United States, 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336; that the exclusive remedy was therefore an action pursuant to the Suits in Admiralty Act, 46 U.S.C.A. § 745. The court concluded that it was without jurisdiction to entertain this action which was one for an injunction and declaratory relief.[4]

Upon this appeal Richfield asserts that the trial court misconstrued the character of this proceeding. It says that this is not a suit on a charter party. It concedes that if it were we would have here a maritime cause of action; but it says its complaint deals among other things with renegotiation. Renegotiation, it says, is not a maritime contract. Nor, says Richfield, does its dispute over the present proposal of the Maritime agency to collect some $75,000 previously paid to Richfield by having the General Accounting Office offset it, give rise to a maritime cause of action.

The appellant places great emphasis upon the Administrative Procedure Act and quotes extensively from general statements made from time to time by the Supreme Court as to the beneficient, remedial purposes of the Act, its new and comprehensive regulation of procedures and the general purpose of the Act to permit persons whose individual legal rights are adversely affected, to appeal to the courts to secure a judicial review of agency action.[5] Although our attention has not been called to any decision expressly upholding appellant's contention, it urges here that a literal reading of the Act, and particularly of § 10 compels a conclusion that the district court was obliged to entertain this action.[6]

4. The court also considered and rejected Richfield's claim that the court had jurisdiction under the Administrative Procedure Act, holding that such jurisdiction did not exist here since there was an adequate remedy under the Suits in Admiralty Act. It also doubted its jurisdiction over the persons of the defendants and in this connection referred to Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534.

5. Among the cases thus cited are Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616; United States v. Morton Salt Co., 338 U.S. 632, 70 S. Ct. 357, 94 L.Ed. 401; Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456; and Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817, none of which dealt with the questions presented by this appeal.

6. § 10 of the Act, Title 5 U.S.C.A. § 1009, provides in part as follows: "§ 1009. Judicial review of agency action—Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion. Rights of review (a) Any person suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action within the meaning of any relevant statute, shall be entitled to judicial review thereof. Form and venue of proceedings (b) The form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action (including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus) in any court of competent jurisdiction. Agency action shall be subject to judicial review in civil or criminal proceedings for judicial enforcement except to the extent that prior, adequate, and exclusive opportunity for such review is provided by law. Acts reviewable (c) Every agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review."

We find it impossible to discover any ground upon which this action could be sustained as one seeking the judicial review authorized by that Act. If we examine the third ground of complaint listed above, namely, the claimed right to a review of the action of the Maritime Administration in threatening to take summary action offsetting the claims for refund of the overtime allowances against sums due Richfield, the complaint does not disclose we are dealing with any *final* agency action.

Assuming that the Maritime Administration is an agency within the meaning of the Act,[6a] and that the plaintiff is a person who will be adversely affected or aggrieved by the proposed action, yet we think the complaint falls short of disclosing that the threatened action has become final. The allegation is that "the defendants * * * have continued to audit and reaudit the books and accounts and now allege that the plaintiff is indebted to the defendant, the United States of America, in a sum exceeding $75,000. The exact amount is unknown and when it is ascertained plaintiff will move for amendment hereof to reflect the true amount. * * * And defendants continue to demand payment of said sum and have threatened that unless their demands are met the claim *will be* referred to the General Accounting Office. * * * *" (Emphasis added.)

Our construction of these allegations as falling short of a description of final agency action, is confirmed by appellant's own description of that action in its reply brief filed here. On page 3 of that brief appellant describes the purpose of this proceeding to be to determine "if the agency action *(which was currently being taken at the time the complaint was filed*—not more than two years prior thereto) does in fact * * * constitute a redetermination of allowable profits. * * * *" (Emphasis added.) On page 11 appellant says that "we are asking review of agency action *which was being taken at the time the complaint was filed*." (Emphasis added.)

If, when the complaint was filed the agency action was only "currently being taken", but not so completed that it could be said to be "ripe for review", such review is not available in this action. See Public Service Comm. v. Wycoff Co., 344 U.S. 237, 241–246, 73 S.Ct. 236; Eccles v. Peoples Bank, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784. See the discussion of the question of when agency action is "sufficiently final" in the opinion of Mr. Justice Frankfurter in Joint Anti-Fas-

---

6a. Some orders of the Maritime Commission were made reviewable by a three-judge district court under Title 46, § 830. By Act of December 29, 1950, such review was committed to the courts of appeals. 5 U.S.C.A. § 1032. We assume that the review authorized by § 830 refers only to the type of order referred to in §§ 821 and 822 of Title 46, relating to common carriers by water, and that it does not cover orders of the sort here discussed. The functions of the former United States Shipping Board and its successor the Maritime Commission, in the administration of the above mentioned sections, was transferred to the Federal Maritime Board. 15 F.R. 3178, 64 Stat. 1273. The same reorganization plan, 1950 Reorganization Plan No. 21, 5 U.S.C.A. following section 133z–15, transferred to the Secretary of Commerce, (with power to delegate to the Maritime Administration within that Department), other functions of the Mari-

time Commission, including the operation, purchase, charter, requisition and use of all ocean vessels under the flag, or control of the United States. Exec.Order 9054, 7 F.R. 837, amended No. 9244, 7 F.R. 7327, U.S.Code Cong.Service 1942, pp. 154, 1254, under War Powers Act June 6, 1941, 55 Stat. 242, U.S.C.A. Tit. 50, App. § 1271.

The fact that § 1032, Title 5, supra, refers to orders of the Maritime Administration, as well as those of the Federal Maritime Board, suggests the possibility that, contrary to our assumption, Congress may have contemplated that orders of that Administration, in exercise of the last mentioned functions, were reviewable under the Act of Dec. 29, 1950, by the courts of appeals. We need not determine that question here, but if that were so, it would furnish an additional reason why the appellant may not prevail in this action.

cist Refugee Committee v. McGrath, 341 U.S. at page 154, 71 S.Ct. at page 639.[7]

■ But even if the agency action of which review is now sought were cast in the form of finality and were actually final, it is plain that the Administrative Procedure Act would not furnish appellant any review of the agency's action demanding repayment of the $75,000. What we deal with here is no different in essence than a communication which the Government might send to a person with whom it has a contract saying: "We have overpaid you $75,000 and we want that amount refunded." It would indeed be surprising if every time a governmental agency notifies a contractor of the agency's views as to a contractor's obligations, the latter may undertake to reverse such agency action by a proceeding under the Administrative Procedure Act. No piecemeal and day to day revision of such routine administrative functions was contemplated when this Act was enacted.[8] The Act itself so discloses. It states that agency action which is reviewable is that "for which there is no other adequate remedy in any court". § 10(c).

■ Manifestly the appellant has adequate means for challenging the disputed contention as to the $75,000 and the asserted right of setoff by suing in the Court of Claims for the amounts due for petroleum products sold to the United States, should payments be withheld as threatened. This is the traditional remedy in such cases. Furthermore, the appellant has here chosen injunction as its means of obtaining review of this agency action and injunction has always been available only where irreparable damage and the absence of an adequate remedy at law can be established.[9] State of California v. Latimer, 305 U.S. 255, 260, 59 S.Ct. 166, 83 L.Ed. 159.

We have considerable difficulty in perceiving just what appellant's theory may be with respect to its right to attack the renegotiation of its profits or to question the effect of the renegotiation agreement which it executed. One of the principal arguments made as to why appellant should not now be charged with having improperly collected the $75,000 is that the practical effect of the agency action complained of was that it would "constitute a redetermination of allowable profits * * * in derogation of appellant's renegotiation contract." It is a little difficult to see how appellant can simultaneously assert both that the renegotiation contract constituted an accord and satisfaction and that all of the proceedings relating to renegotiation

7. See, also, Home Loan Bank Board v. Mallonee, 9 Cir., 196 F.2d 336, 357, and footnote 7, p. 354.

8. Cf. Helco Products Co. v. McNutt, 78 U.S.App.D.C. 71, 137 F.2d 681, 684, 149 A.L.R. 345: "What a comfort it would be, if a declaratory judgment could be made as available as an interoffice memorandum; whenever a board of directors meets to consider a proposed new venture. But that millenium has not yet arrived."

9. Its prayer for declaratory relief, in addition to that for an injunction, does not help appellant. "The operation of the Declaratory Judgment Act is procedural only." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617; Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671, 70 S. Ct. 876, 94 L.Ed. 1194. And in Aircraft & Diesel Corp. v. Hirsch, 331 U.S. 752, at page 776, 67 S.Ct. 1493, at pages 1504, 1505, 91 L.Ed. 1796, where the plaintiff subcontractor was held not entitled to relief because he had an adequate remedy by suit against the contractor, who in turn could sue the Government in the Court of Claims, the complaint sought a declaratory judgment as well as an injunction. For further discussion of limitations upon declaratory relief which must be borne in mind here, see Coffman v. Breeze Corporations, 323 U.S. 316, 65 S.Ct. 298, 89 L.Ed. 264, and Public Service Comm'n v. Wycoff, Co., 344 U.S. 237, 73 S.Ct. 236.

The existence of another adequate remedy has always been a limitation upon the use of the traditionally accepted remedies used for review of administrative action, such as mandamus, prohibition, and the like. See High, Extraordinary Legal Remedies, Third Ed. §§ 15, 770.

were a nullity and can be disregarded as not only unlawful but in violation of appellant's constitutional rights.

But wholly apart from that difficulty, it is plain that appellant cannot in this connection review the question of its excessive profits or the agency action determining them for it has not exhausted the administrative remedy given it under the Renegotiation Act, U. S.C.A. Title 50 App. § 1191(e), which provides for a review by the Tax Court, a remedy which is exclusive. See French v. War Contracts Price Adjustment Board, 9 Cir., 182 F.2d 560. It will not do for appellant to say that its claim here is an extraordinary one not subject to the rule of exhaustion of administrative remedies because it attacks the constitutionality of the Renegotiation Act, or of its application to appellant. There is wanting any disclosure as to why appellant thinks the Act is unconstitutional. And, in any event, this contention is foreclosed by Aircraft & Diesel Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796, as well as by such cases as Lichter v. United States, 334 U.S. 742, 68 S.Ct. 1294, 92 L.Ed. 1694 and United States v. Bonnell, 9 Cir., 180 F.2d 145, sustaining the validity of the Act. Cf. French v. War Contracts Price Adjustment Board, supra, 182 F.2d at page 565.

Finally, the complaint indicates that appellant sought to have the district court adjudge and declare that it had the right to recover from the United States such sum as might be determined to represent "just compensation" for the use of its vessel. Apparently the plaintiff's theory has two angles. The first is that it had executed the charter parties and other documents set forth "under duress" and hence that they may be wholly disregarded, and that appellant should therefore be adjudged entitled to recover as much as if the ships had been requisitioned without the execution of any charter party. The alternative theory appears to be that the circumstances relating to the Maritime agency's recent demands for a return of the $75,000

amounted to a repudiation by the United States of all express contracts, thus permitting Richfield "to accept such repudiation and sue for just compensation crediting against such just compensation profits heretofore allowed plaintiff in renegotiation."

There are several reasons why we cannot approve either alternative theory. In the first place, the complaint is wholly wanting in any specification of facts which would disclose any duress under which appellant could have been acting. The assertion of duress is a mere conclusion. And the complaint shows conclusively, we think, that duress in a legal sense was wholly wanting. For instance, the complaint contains the following allegation: "On April 7, 1944, the War Shipping Administration issued G. O. 11, Supp. 4, prescribing a revised form of time charter for tank vessels and G.O. 37 prescribing new rates. Under the revised form of charter party, the shipowners, including plaintiff, had the option of accepting the tendered rates or accepting 75 per cent thereof and suing for just compensation. By reason of its past coercion practices the threat of renegotiation penalties and other economic pressure brought to bear upon plaintiff, plaintiff ultimately accepted the revised charter form and the reduced rates under duress." Thus appellant discloses that it was not obliged to accept the tendered rates but was given the alternative option of accepting 75 per cent thereof and suing for just compensation. Nothing amounting to duress as it is known in law affected the appellant's choice between the tendered alternatives.

But if we were to assume that the complaint sets forth facts showing that appellant was entitled to recover just compensation without regard to any charter party or other agreement, appellant still had an adequate remedy in the Court of Claims. Title 28, § 1491. Phelps v. United States, 274 U.S. 341, 47 S.Ct. 611, 71 L.Ed. 1083. This being so, there is no remedy in respect to these disputes under the judicial review pro-

visions of the Administrative Procedure Act for, even assuming that these disputes have something to do with agency action, it is not a case where "there is no other adequate remedy in any court" within the language of § 10(c) of the Act.

We have thus accepted at face value appellant's contention that it was not here seeking relief based upon the provisions of any charter party. If it were to be suggested that the appellant was bound only by the terms of the Charter Party first executed and that all subsequent modifications and changes thereof were a nullity because executed under duress, the answer would be that the district court correctly held that the exclusive jurisdiction in such a case would be in Admiralty under the decision in Matson Navigation Co. v. United States, supra, and it would follow that the defenses interposed based on the two year limitation contained in the Suits in Admiralty Act would be good.

What we have said makes it unnecessary for us to consider the additional objections urged to the maintenance of this action such as that it is an attempt to sue the United States without its consent;[10] that there is an absence of indispensable parties defendant; and that a suit of the character here involved cannot be maintained elsewhere than in the District of Columbia.

We therefore think that the action was properly dismissed, and the judgment is affirmed.

---

10. Appellant asserts that "the Administrative Procedure Act is consent of the sovereign to be sued." Appellee challenges this, and cites Blackmar v. Guerre, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534, and Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628. The Larson case dealt with the War Assets Administration, which succeeded to the functions of the Surplus Property Administration which was to expire three years after termination of hostilities, 58 Stat. 784, § 38, and hence, under 5 U.S.C.A. § 1001, the Act did not apply to it. If a similar action were brought against the members of an agency not excluded from the Act, an interesting question would arise whether in view of the general purposes of that Act the defense sustained in the Larson case, that the action was against the sovereign, would be a good one, since the scope of review itemized in § 10(e) is not limited to items (B) (2) and (3), the "two types" described in Larson. See 337 U.S. at page 690, 69 S.Ct. at page 1461. See the comment in Blackmar v. Guerre, supra, 342 U.S. at page 516, 72 S.Ct. at page 412. We do not reach that question here.