ARMSTRONG & ARMSTRONG, INC.,
Plaintiff,

v.

UNITED STATES of America, acting By and Through Rogers C. B. MORTON, Secretary of the Department of the Interior, and the United States Department of the Interior, Defendants.

Civ. No. 2780.

United States District Court,
E. D. Washington,

Jan. 3, 1973.

—◆—

Ferguson & Burdell by Donald McL. Davidson, and William B. Moore, Seattle, Wash., for plaintiff.

Dean C. Smith, U. S. Atty., and Robert M. Sweeney, Asst. U. S. Atty., for defendants.

OPINION

POWELL, District Judge.

This is a civil action by Armstrong & Armstrong, Inc. against the United States of America and Rogers C. B. Morton as Secretary of the Interior. The agency alleged to be responsible for the damages claimed by the plaintiff is the Bureau of Reclamation, a sub-agency of the Department of the Interior. The plaintiff was determined to be an unsuccessful bidder on a government contract for construction work described by the invitation to bid as:

"Lake Chelan Pumping Plant Discharge Line and Regulating Tank, Manson Unit, Washington Chelan Division, Chief Joseph Dam Project."

The plaintiff claims that Bureau of Reclamation officials acted negligently, arbitrarily and capriciously in denying the award of this contract to the plaintiff. Damages of $9,414.13 are alleged to have been sustained by the plaintiff in bid preparation costs and $142,000.00 in loss of profits.

*Admitted Facts*

The following facts are admitted in the Pretrial Order. The plaintiff is and was a responsible contractor, capable of performing the work involved in this project. The invitation to bid was issued prior to July 15, 1971. The invitation provided for opening of bids in Manson, Washington, at 2:00 p. m., July 15, 1971.

The bid invitation required bidders to quote on 82 items. Some of the items required lump sum bids. Most of the items required a per unit item bid. The schedule for bids required a statement of the total amount bid in addition to the unit price bid for non-lump sum bid items. The total amount shown for items bid on a per unit basis was a product of the unit price multiplied by the quantity of material specified on the schedule for bids.[1] The invitation also provided that the totals computed for each item bid on a per unit basis and the total bid for lump sum items be added to arrive at the total amount bid for the entire contract.

When the bids were opened, plaintiff was the apparent low bidder at $1,415,757.55. The Bureau of Reclamation Contracting Officer's authorized representative rechecked all the bids. Errors were discovered in four bids. There were no errors in the plaintiff's bid.

There were three errors noted in the next lowest bid which was submitted by Bovee & Crail. An arithmetic error in the extension of unit prices for items 3 and 82 lowered their bid by $340.00. After correcting these two items, it appeared that there was a discrepancy between the total bid submitted for the entire project and the arithmetic total of the 82 items. The correct arithmetic total was $5,000.00 lower. Using the changed figures the Bovee & Crail bid could be reduced to $1,413,027.00 which would displace the low bid of the plaintiff.

The Bureau's local officer informed Bovee & Crail that they had made an arithmetic error in their bid and that they were now the apparent low bidder. (TR. p. 65)

---

1. The quantity specified for each bid item on a per unit basis was only an estimate; the ultimate amount paid was determined by the quantity actually used in each item of work during construction. Thus a contractor's educated guess as to what quantity would actually be required on the job as compared with what was specified in the bid invitation could materially influence his unit price bid.

The plaintiff timely protested the proposed award to Bovee & Crail and appealed a contrary ruling to the Comptroller General. On November 17, 1971 the Comptroller General announced his decision upholding the contracting officer.

On November 15, 1971 the plaintiff secured a temporary restraining order preventing award of the contract. On November 23, 1971 this Court held a hearing, received evidence and heard argument on plaintiff's motion for a preliminary injunction. The motion was denied and the injunction lifted. Plaintiff then amended its complaint. The pretrial order sets out the contentions of the parties.

### Issues for Determination

The issues to be decided are:

1. Does plaintiff have standing to sue and thus challenge the award of the bid to another bidder?

2. Is plaintiff's claim in tort or contract, and if the latter is this Court's jurisdiction limited to $10,000.00 under the Tucker Act?

3. Was the third error in the Bovee & Crail bid a mistake in addition and correctible or was it an ambiguous error?

4. Was the Government acting within the procurement regulations in directing Bovee & Crail to correct its bid and thus displace the low bid of plaintiff?

5. If plaintiff can recover, what is the amount of its damages?

### Standing

To maintain this action in the federal district court, plaintiff must first establish its standing. The question of whether a frustrated bidder on a Government contract has sufficient standing to press a judicial review of administrative action has not been specifically answered in this Circuit. See Hi-Ridge Lumber Co. v. United States, 443 F.2d 452, 457 (9th Cir. 1971).

I find, after reviewing Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L. Ed.2d 192 (1970); Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L. Ed.2d 184 (1970); Perkins v. Lukens Steel, 310 U.S. 113, 60 S.Ct. 869, 84 L. Ed. 1108 (1940); Ballerina Pen Co. v. Kunzig, 140 U.S.App.D.C. 98, 433 F.2d 1204 (1970); cert. denied, sub nom., National Industries for Blind v. Ballerina Pen Co., 401 U.S. 950, 91 S.Ct. 1186, 28 L.Ed.2d 234 (1971), and Scanwell Laboratories Inc. v. Shaffer, 137 U.S. App.D.C. 371, 424 F.2d 859 (1970), that in cases requesting equitable or declaratory relief in the federal courts certain requirements must be met to establish standing.

With the understanding that the question of standing is to be resolved without considering the merits of a case, Flast v. Cohen, 392 U.S. 83, 99–100, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), it would appear that the plaintiff must show first, an actual injury in fact to insure that his interest is sufficiently adverse. Second, it must be alleged that the agency has acted arbitrarily, capriciously or in excess of its statutory authority resulting in injury to an interest of the plaintiff that is at least arguably one protected or regulated by the law in question. Finally, the plaintiff must demonstrate that there is no clear, convincing indication from Congress that judicial review is to be withheld in his particular case.

Because Armstrong & Armstrong primarily seeks damages at law rather than general equitable relief, and because, as is more fully explained below, the Administrative Procedure Act [5 U.S.C.A. § 701 et seq.] does not afford an independent jurisdictional basis for this Court to entertain these claims, I find the test for standing employed by the Court of Claims instructive on the issue of standing in this case.

In actions for damages allegedly incurred because of arbitrary or capricious or otherwise unlawful acts or omissions by administrative agency pro-

curement officials the Court of Claims has evolved a rule that applies to all procurement situations. That is, each request for offers to contract with the federal government have as an implied condition that each offer received will be fairly and honestly considered. When a prima facie case of arbitrariness or capriciousness has been established, a claimant will be allowed to present non-frivolous claims. See Continental Business Enterprises v. United States, Ct.Cl., 452 F.2d 1016 (1971); Keco Industries, Inc. v. United States, 428 F.2d 1233, 192 Ct.Cl. 773 (1970); Heyer Products Co. v. United States, 140 F.Supp. 409, 135 Ct.Cl. 63 (1956); 177 F.Supp. 251, 147 Ct.Cl. 256 (1959).

██ The essence of this case is a claim for damages, alternatively under the Federal Tort Claims Act, or under the Tucker Act. Accordingly, the caution displayed and urged in granting pre-procurement equitable or declaratory relief in M. Steinthal & Co. v. Seamans, 147 U.S.App.D.C. 221, 455 F.2d 1289 (1971) and other cases in that Circuit limiting the application of Scanwell Laboratories, *supra*, such as Blackhawk Heating and Plumbing Co. v. Driver, 140 U.S.App.D.C. 31, 433 F.2d 1137, 1141 (1970); A. G. Schoonmaker Co., Inc. v. Resor, 144 U.S.App.D.C. 250, 445 F.2d 726 (1971), and Wheelabrator Corporation v. Chafee, 147 U.S.App.D.C. 238, 455 F.2d 1306 (1971), though sound and deserving of thorough consideration, are not really apposite here. I conclude that the plaintiff has sufficiently demonstrated his interest and injury to satisfy the requirements of standing under the tests outlined above.

### Nature of Claims Asserted

The plaintiff contends that under the invitation to bid and the applicable federal regulations the first two errors in the Bovee & Crail bid were of the type that could be properly corrected. They were ascertainable from the face of the bid, and neither error, nor the total of both errors, operated to displace a low bidder.

However, as to the third error—the discrepancy between the sum stated as the total bid and the correct arithmetic total of the 82 items constituting that sum—the plaintiff argues that an ambiguity was presented as to whether the correct sum of the parts was the intended bid, or the total sum actually stated, or neither. This ambiguity, it is claimed, could not be resolved from the face of the bid without resort to extrinsic evidence.

To the counter-argument that the natural conclusion to be gleaned from the face of the bid was that the bidder intended the arithmetically correct bid, plaintiff answers that assuming the "natural conclusion" is to allow unscrupulous contractors to submit two bids and claim the highest low bid as the intended bid.

The ambiguity in this bid is further compounded because of the possibility that any combination of use of an unintended unit price, or an unintended omission or inclusion of an integer or a decimal in a lump sum bid item, which was not apparent or obvious per se, could also rationally explain this particular discrepancy.

In this case there was no initial allegation of error by Bovee & Crail. The authorized local representative of the contracting officer simply informed Mr. Bovee that his firm had made arithmetic errors and that the Bureau was reducing Bovee & Crail's bid by $5,340.00 and that they were then the apparent low bidder. The resulting situation is one to be guarded against and avoided by strict adherence to government procurement regulations.

41 CFR § 1–2.406–2, Apparent Clerical Mistakes:

"Any clerical mistake, apparent on the face of a bid, may be corrected by the contracting officer prior to award, if the contracting officer has *first obtained from the bidder verification of the bid actually intended.* Examples of such apparent mistakes are: obvious misplacement of a decimal

point; obvious incorrect discounts (for example, 1 percent 10 days, 2 percent 20 days, 5 percent 30 days) ; obvious reversal of the price f. o. b. destination and the price f. o. b. origin; and obvious mistake in designation of unit. Correction shall be reflected in the award document." (Emphasis added.)

█ The plaintiff's arguments are correct. I conclude that the third error was ambiguous to the extent that the actual error made was not obvious or apparent from the face of the bid. Accordingly, 41 CFR § 1–2.406–2 was not applicable. Even if it were applicable, the Bureau's on-site representative vitiated the provisions of that section when he told Mr. Bovee that his bid was in error and that correction resulted in his bid being the apparent low bid. (Tr. 65). By not first informing Mr. Bovee that his bid contained suspected errors and then requesting verification of the intended bid he inadvertently created a situation whereby independent bidder verification became less likely than bidder acquiescence in the assertion of the presumed error and the assumed correction thereof.

41 CFR § 1–2.406–1 provides in pertinent part:

" * * *

In cases of apparent mistakes and in cases where the contracting officer has reason to believe that a mistake may have been made, he shall request from the bidder a verification of the bid, calling attention to the suspected mistake. If the bidder alleges a mistake, the matter shall be processed in accordance with this § 1–2.406. * * *."

As 41 CFR § 1–2.406–2 was not applicable in this case, 41 CFR § 1–2.406–3(2) applies. It provides:

"A determination may be made permitting the bidder to correct his bid where the bidder requests permission to do so and clear and convincing evidence establishes both the existence of a mistake and the bid actually intended. *However, if such correction would result in displacing one or more lower acceptable bids, the determination shall not be made unless the existence of the mistake and the bid actually intended are ascertainable substantially from the invitation and bid itself.* If the evidence is clear and convincing only as to the mistake, but not as to the intended bid, a determination permitting the bidder to withdraw his bid may be made. * * *." (Emphasis added.)

The plaintiff reads the provisions of the bid invitation as also supporting his contention that bid errors will not be recognized if their recognition would result in a reduction of the bid price. The bid invitation provisions referred to provide:

"1. The bidder hereby waives that portion of any alleged mistake or mistakes in his bid which falls within the following amounts:

* . * * * * *

d. If original bid is $1,000,000 or more—$37,500 plus 2% of the original bid over $1,000,000.

* * * * * *

The above waiver does not apply to any clerical mistake which is obvious or apparent on the face of the bid including but not limited to (1) a mistake in the extension of a unit price or prices; (2) a mistake in totaling the sums of various bid items; or (3) obviously misplaced decimal point.

*The above provisions shall not be applicable to allegations of mistakes which, if allowed, would result in a reduction in the bid price."* (Emphasis added.)

It would appear that the probable intended meaning of the last paragraph is that the bidder agrees to waive errors in certain amounts unless the claimed error would serve to reduce the bid price and hence the cost of the contract to the government. It is unnecessary to decide. Even when read most favorably to the government, it does not detract from the conclusion reached above. It should be

noted that the apparent clerical error section of the bid invitation also requires that the suspected errors be apparent or obvious on the face of the bid.

■■■ The third error in the Bovee & Crail bid could not be ascertained from the face of the bid. An error was apparent but its nature and cause were obscure. Since the Bovee & Crail bid could not be summarily corrected under the provisions of 41 CFR § 1–2.406–2 and the bid intended substantially ascertained from the face of the bid as permitted in 41 CFR § 1–2.406–3(2), under that same regulation the "corrected" Bovee & Crail bid could not be substituted for the plaintiff's acceptable lower bid. The correction of the Bovee & Crail bid was unreasonable, an abuse of administrative discretion and in contravention of provisions of the procurement regulations.

These regulations [41 CFR § 1–1.000 et seq.] were promulgated pursuant to 40 U.S.C.A. § 486(c) by the Administrator of the General Services Administration. The procurement regulations of the government have the force and effect of law. Paul v. United States, 371 U.S. 245, 255, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963); Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 384–385, 68 S.Ct. 1, 92 L.Ed. 10 (1947); Farmer v. Philadelphia Electric Co., 329 F.2d 3, 7 (3 Cir. 1964). Agency action in contravention of procedures established by procurement regulations is agency action that exceeds its statutory powers. The language quoted from the Comptroller General's opinion, by now Chief Justice Burger, in Superior Oil Co. v. Udall, 133 U.S.App.D.C. 198, 409 F.2d 1115, 1119–1120 (1969), is equally applicable to this case. There he wrote:

"Not surprisingly the subject of bidding procedures has been given close attention by the Comptroller General whose view is that

'the strict maintenance of the competitive bidding procedures required by law is infinitely more in the public interest than obtaining a pecuniary advantage in individual cases by permitting practices which do violence to the spirit and purpose of the law. Conditions or reservations which give a bidder a chance to second-guess his competitors after bid-opening must be regarded as fatal to the bid.' 34 Comp.Gen. 82, 84, B–120436 (1954)."

Failure to strictly comply with the applicable procurement regulations in this case denied to Armstrong & Armstrong a fair and honest consideration of their bid as contemplated by the law.

### Jurisdiction

The plaintiff claims this Court has jurisdiction to hear this case on several bases. Jurisdiction is asserted under the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201 and 2202, The Administrative Procedure Act, 5 U.S.C.A. §§ 702 and 703, The Federal Tort Claims Act, 28 U.S.C.A. § 2674, Federal Question Jurisdiction under 28 U.S.C.A. § 1331, and The Tucker Act, 28 U.S.C.A. § 1346(a)(2) and 28 U.S.C.A. § 1402. If cognizable under the Tucker Act, any claim in excess of $10,000.00 is specifically waived by the plaintiff.

■ The Declaratory Judgment Act does not create a new jurisdictional base for federal courts. For declaratory relief plaintiff must show jurisdiction exists separate from this statutory remedy. Lear Siegler, Inc. v. Adkins, 330 F.2d 595 (9th Cir. 1964).

■ Judicial review is available under the Administrative Procedure Act, 5 U.S.C.A. § 701(a), except where "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." See Barlow v. Collins, 397 U.S. 159, 165, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); Adams v. Witmer, 271 F.2d 29, 34–35 (9th Cir. 1958). The Act may provide an independent basis for judicial review only if the doctrine of sovereign immunity does not so transcend the issues in the case as to bar the suit. State of Washington v. Udall, 417 F.2d 1310, 1319, 1320 (9th Cir. 1969). In other words, only if the agency action

is not committed to agency discretion by law.

The scope of judicial review is set forth in 5 U.S.C. § 706. Under subsection (2)(C) and (D), this Court may set aside agency action that goes beyond the limitations of statutory right or not done in accordance with procedures required by law.

■■ This relief is available, unless, as is provided in 5 U.S.C. § 704, an adequate remedy in court is found to exist and thus bar application of the Administrative Procedure Act's provisions for judicial review. See Richfield Oil Corp. v. United States, 207 F.2d 864, 870, 872 (9th Cir. 1953); Poirier v. C. I. R., 299 F.Supp. 465 (D.C.La.1969). As relief is at least available in the Court of Claims under 28 U.S.C. § 1491 (1970), judicial review may not be predicated on the Administrative Procedure Act. Further, monetary relief is not available under this Act.

■ This action is not one that may be maintained against the procurement officials individually. Larson v. Domestic and Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). This suit is against the federal government. Dugan v. Rank, 372 U.S. 609, 620, 621, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). Relief by an award for damages must be predicated upon express consent of the sovereign to suit. And, the terms of its consent defines the court's jurisdiction to hear the suit. Larson v. Domestic and Foreign Corp., *supra*, 337 U.S. at 693, 69 S.Ct. 1457; United States v. 3,317.39 Acres of Land, More or Less, in Jefferson County, Ark., 443 F.2d 104 (8th Cir. 1971).

■ Plaintiff's claim under one statute granting consent to many kinds of suits, the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., must fail. First, no claim for damages has ever been filed with and finally denied by the agency as required by the Act [28 U.S.C. § 2675]. This requirement is jurisdictional and cannot be waived. Claremont Aircraft, Inc. v. United States, 420 F.2d 896 (9th

Cir. 1970); Childers v. United States, 442 F.2d 1299 (5th Cir. 1971); and second, an action based on claimed interference with contract rights is barred under 28 U.S.C. § 2680(h). Thompson v. United States, 408 F.2d 1075, 1081 (8th Cir. 1969); Newberg v. Federal Savings and Loan Ins. Corp., 317 F.Supp. 1104, 1107 (D.C.Ill.1970).

■ The plaintiff is entitled to recover under the Tucker Act, 28 U.S.C.A. § 1346(a)(2) and 28 U.S.C.A. § 1402, bid preparation costs of $9,414.13. The jurisdiction of this Court is limited to claims not in excess of $10,000.00. Plaintiff has waived the remainder of its claim in the event jurisdiction and recovery in this court is predicated upon the Tucker Act. Such waiver is acceptable. See, United States v. Johnson, 153 F.2d 846 (9th Cir. 1946); Perry v. United States, 308 F.Supp. 245 (D.C. Colo.1970); affirmed, 442 F.2d 353 (10th Cir. 1971).

This opinion shall constitute the findings of fact. Plaintiff's counsel is requested to prepare and submit a judgment in accordance with this opinion, granting to plaintiff judgment for $9,414.13 and costs.