John P. KING

v.

The UNITED STATES.

No. 248-65.

United States Court of Claims.

Feb. 16, 1968.

Neil B. Kabatchnick, Washington, D. C., attorney of record, for plaintiff. Richard H. Love, Washington, D. C., of counsel.

James A. Pemberton, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Warner W. Gardner, Washington, D. C., for amicus curiae, Committee of American Steamship Lines. Shea & Gardner, Robert T. Basseches and John R. Kramer, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## ON DEFENDANT'S MOTION TO DISMISS THE PETITION

DAVIS, Judge.

In 1959 Colonel John P. King was retired from the Army for longevity (*i. e.*, years of service) after having accrued over thirty years for pay purposes. Under 10 U.S.C. §§ 3911, 3991 (1964), his longevity retirement pay rate has been 75 per cent of the monthly basic pay of a colonel. He contends, however, that he should have been retired for disability and that the Secretary of the Army (through the Physical Disability Appeal Board and the Board for Correction of Military Records) acted arbitrarily and capriciously in failing to retire him for disability and in refusing to correct his military record to show retirement on that ground.

Were plaintiff retired for disability, the maximum retirement pay rate to which he would then be entitled would be the same as that for longevity. See 10 U.S.C. §§ 1201, 1401 (1964). But Int.Rev.Code of 1954, § 104(a) (4), excludes from gross income "amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country * * *." Colonel King, counting on the application of this provision to the disability retirement pay he claims, filed his petition here for the difference—equal to the federal taxes assessed on his retirement pay—between disability pay and the longevity compensation he has received after taxes.

Before bringing suit, he did not, however, file a claim with the Commissioner of Internal Revenue for a refund of the taxes paid on his retirement benefits. Since Int.Rev.Code of 1954, § 7422(a), bars a suit for taxes in the absence of a timely refund claim, we issued an order[1] upholding, in effect, the Government's first affirmative defense (that the "petition alleges basically a claim for a refund of taxes paid on retirement pay, without an allegation of the filing of a claim for refund") and suggesting that the sole relief which plaintiff could now possibly have from this court would be a declaration of his right to be retired for physical disability and to have his records changed accordingly. Compare Prince v. United States, 119 F.Supp. 421,

---

1. "This case comes before the court on defendant's motion, filed August 19, 1966, to dismiss the petition, and on plaintiff's motion, filed November 21, 1966, to strike defendant's first affirmative defense. Upon consideration thereof, together with the opposition and responses thereto, since the court is of the view that the only possible basis upon which the case can be maintained is under the Declaratory Judgment Act, it therefore requests briefs on the applicability to this court and this case of that Act and will set the case for oral argument on those issues.

IT IS THEREFORE ORDERED that plaintiff is granted 30 days from this date to submit a brief on the applicability of the Declaratory Judgment Act to this court and this case with defendant granted 30 days to file its response and plaintiff 15 days to reply,

IT IS FURTHER ORDERED that if plaintiff does not wish to proceed on the basis set forth herein, he has leave to dismiss the petition without prejudice."

422, 127 Ct.Cl. 612, 614, 623 (1954) (a similar suit in which timely refund claims had been filed).

Because of the history of the point in this court (see Part I *infra*) and on account of the defendant's explicit challenge (in its motion to dismiss) to our authority to give declaratory relief, we invited reconsideration of the application of the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02 (1964), to the Court of Claims and to Colonel King's case. Plaintiff and defendant have each presented briefs and oral argument. In addition, the amicus curiae, in support of plaintiff, has offered written and oral arguments of great help. We are not now concerned, it need hardly be said, with the merits of the plaintiff's retirement for longevity, rather than physical disability, or the refusal to correct his military records. The sole issue at this stage is the pertinence of the Declaratory Judgment Act, which provides:

2201. *Creation of remedy.*

In a case of actual controversy within its jurisdiction, except with respect to federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

2202. *Further relief.*

Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

**I**

Since this is a reworking of old ground, not a first plowing, we start with the embedded authority. There are, of course, a raft of cases which can conceivably be seen as warning that a declaration may not be granted by this court or in suits against the United States.[2] The vast majority are quite distinguishable. Among them are decisions in which declaratory relief could not be granted because the suit was "with respect to federal taxes", a category expressly exempt from the Declaratory Judgment Act,[3] and those in which the prayer for relief, either explicitly or as construed by the court, was for specific relief.[4]

2. We deal only with declaratory relief against the United States *eo nomine*, not with declarations directed exclusively to specific public officals. "There can now be little question that a suit will lie against a * * * [public officer] for acting beyond his statutory authority, even though a subordinate, Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 701–702, 69 S.Ct. 1457, 93 L.Ed. 1628; and the declaratory judgment, together with an enforcing injunction, furnishes a proper device to test the scope of this authority. Joint Anti-Facist Refugee Committee v. McGrath, 341 U.S. 123, 139–140, 71 S.Ct. 624, 95 L.Ed. 817." United States Lines Co. v. Shaughnessy, 195 F.2d 385, 386 (C.A.2, 1952).

It is clear that the district courts, under the jurisdictional grants of 28 U.S.C. §§ 1331(a), 1361 (1964) (and the pertinent District of Columbia provisions) and within the venue limitations of 28 U.S.C. § 1391(e) (1964), may issue declaratory judgments and relief in the nature of mandamus with respect to corrections in military records when the responsible official has exceeded his statutory or constitutional powers. See, e. g., Harmon v. Brucker, 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); Van Bourg v. Nitze, 388 F.2d 557 (C.A. D.C., Oct. 17, 1967) No. 20,584); Ashe v. McNamara, 355 F.2d 277 (C.A.1, 1965); Ogden v. Zuckert, 111 U.S.App. D.C. 398, 298 F.2d 312 (C.A.D.C., 1961); Bland v. Connally, 110 U.S.App.D.C. 375, 293 F.2d 852 (1961).

3. See, e. g., Sweeney v. United States, 285 F.2d 444, 447, 152 Ct.Cl. 516, 522 (1961); Wilson v. Wilson, 141 F.2d 599, 600 (C.A.4, 1944); Farmer v. Hooks, 194 F.Supp. 1 (E.D.Ky.1961).

4. See Blanc v. United States, 244 F.2d 708 (C.A.2), cert. denied, 355 U.S. 874, 78 S.Ct. 126, 2 L.Ed.2d 79 (1957); Kelly v. United States, 138 F.Supp. 244, 133 Ct.Cl. 571 (1956); Gaines v. United States, 131 F.Supp. 925, 132 Ct.Cl. 408 (1955); Clay v. United States,

Nor do we think that any considered implication of the absence of the remedy can be drawn from decisions limiting a money recovery in this court to the amount owing at the date of judgment;[5] holding that, for the purposes of the statute of limitations, "no cause of action accrues before the claimant can bring a suit for a money judgment";[6] and indicating that the Tucker Act does not supply jurisdiction to grant nominal damages.[7]

■ In addition, the denial of declaratory relief in this court and in other suits against the United States has often rested squarely on the ground that the court had no right to grant *any* relief (money award, specific relief, or declaratory judgment) because, in the various phrasings used in the opinions, the Government had not consented to be sued on the particular cause of action, the matter was nonjusticiable, there was no jurisdiction over the subject matter, the issue was legislatively committed to exclusive agency discretion, relief would interfere with the remedial scheme established by the Congress, or the claimant failed to

93 U.S.App.D.C. 119, 210 F.2d 686 (1953), cert. denied, 347 U.S. 927, 74 S.Ct. 530, 98 L.Ed. 1080 (1954); Hart v. United States, 91 Ct.Cl. 308 (1940); Ford Bros. & Co. v. Eddington Distilling Co., 30 F.Supp. 213 (M.D.Pa.1939).

5. See, e. g., Shaw v. United States, 357 F.2d 949, 963, 174 Ct.Cl. 899, 920 (1966). This is a routine practice followed for years without inquiry into the possibility of extending recovery beyond the date of judgment.

6. Oceanic S.S. Co. v. United States, 165 Ct.Cl. 217, 218 (1964). There the court did not reconsider the possibility of a declaratory remedy. We do not decide whether the availability of declaratory relief would require a reevaluation of the Oceanic holding. Compare Luckenbach S.S. Co. v. United States, 312 F.2d 545 (C.A.2, 1963); American-Foreign S.S. Corp. v. United States, 291 F.2d 598 (C.A.2), cert. denied, 368 U.S. 895, 82 S.Ct. 171, 7 L.Ed.2d 92 (1961).

7. "[T]he futile exercise of suing merely to win a suit was not consented to by the United States when it gave its consent to be sued for its breaches of contract." Severin v. United States, 99 Ct.Cl. 435, 443 (1943) (alternative holding), cert. denied, 322 U.S. 733, 64 S.Ct. 1045, 88 L.Ed. 1567 (1944). In Severin the court relied on one of the "Gold Clause" cases, Nortz v. United States, 294 U.S. 317, 327, 55 S.Ct. 428, 430, 79 L.Ed. 907 (1935), where the Supreme Court stated that "the Court of Claims has no authority to entertain the action, if the claim is at best one for nominal damages." Accord, Perry v. United States, 294 U.S. 330, 355, 55 S.Ct. 432, 79 L.Ed. 912 (1935); Marion & R. V. Ry. Co. v. United States, 270 U.S. 280, 282, 46 S.Ct. 253, 70 L.Ed. 585 (1926);

Grant v. United States, 7 Wall. 331, 338, 19 L.Ed. 194 (1868) (alternative holding).

While a suit for nominal damages, like a declaratory judgment, may be instituted "to establish a right" for the purpose of terminating an ongoing dispute or of avoiding future damages (Restatement of Ttorts § 907, comment b, at 553 (1939)), it is sometimes used for pure vindication without any view to the future or redress for the judicially cognizable effects of the past (see, e. g., ibid.; Wilson v. Eberle, 18 F.R.D. 7, 9, 15 Alaska 651 (D. Alaska 1955)). In the cases cited above, nominal damages were thought to serve, at best, only the latter function; there was deemed to be no real existing injury. The decisions should not, therefore, be read as antagonistic to the use of the declaratory device to adjudicate rights and liabilities without regard to the question of the recovery of damages, but rather as a particularized application of the doctrine that the federal courts cannot act in the absence of an existing "case" or "controversy". (It is hardly likely, moreover, that the Supreme Court had the Declaratory Judgment Act in mind when it decided the "Gold Clause" cases since that innovation had been adopted only a few months before.) That the "nominal damages" cases do allow separation of the issues of liability and damages is bolstered by the Court's careful distinction in Perry v. United States, supra, 294 U.S. at 354, 55 S.Ct. at 436, between the questions of "the binding quality of the government's obligations" and "plaintiff's right to recover damages." Our practice under Ct.Cl.R. 47 has long been to first determine liability and then to determine the recovery, if any, to which the plaintiff is entitled. See Part III infra.

set up any valid cause of action.[8] Similarly, in many of the cases saying broadly that a declaration cannot be given in litigation against the Government, the real concern was that granting a declaratory judgment would improperly circumvent the restrictions (judicial or legislative) on other forms of relief.[9]

8. Rolls-Royce Ltd. v. United States, 364 F.2d 415, 419–420, 176 Ct.Cl. 694, 701 (1966) (intervenor's counterclaim against plaintiff—lack of jurisdiction); Drill v. United States, 157 Ct.Cl. 945 (1962) (order), cert. denied, 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720 (1963) (plaintiff had no constitutional or statutory right to a federal job); Savorgnan v. United States, 171 F.2d 155, 159 (C.A.7, 1948), aff'd on other grounds, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287 (1950) (United States citizenship—no consent to suit).; Love v. United States, 108 F.2d 43, 50 (C.A.8, 1939), cert. denied, 309 U.S. 673, 60 S.Ct. 716, 84 L.Ed. 1018 (1940) (denial of federal employment—nonjusticiable because committed to agency discretion); Wohl Shoe Co. v. Wirtz, 246 F.Supp. 821 (E.D.Mo.1965) (liability under Fair Labor Standards Act—nonjusticiable because exclusive remedy lies in defense of Secretary of Labor's enforcement suit); Bell v. United States, 203 F.Supp. 371, 374 (W.D.Wis.1962) (alternative holding) (length of criminal sentence—no consent); Di Battista v. Swing, 135 F.Supp. 938 (D.Md.1955), (suit to have immigration bond declared not breached even though Government had not collected on the bond); Birge v. United States, 111 F.Supp. 685 (W.D.Okl.1953) (refusal to add disability-income clause to National Service Life Insurance Act policy—not subject to judicial review); Schilling v. United States, 101 F.Supp. 525 (E.D. Mich.1951) (refusal to issue National Service Life Insurance Act policy—not subject to judicial review); New York Technical Institute of Md. v. Limburg, 87 F.Supp. 308, 311–313 (D.Md.1949) (alternative holding) (regulation of Trade School tuition under Servicemen's Readjustment Act—nonjusticiable because committed to agency discretion); Commers v. United States, 66 F.Supp. 943, 949–950 (D.Mont.1946) (alternative holding), aff'd per curiam, 159 F.2d 248 (C.A.9), cert. denied, 331 U.S. 807, 67 S.Ct. 1189, 91 L.Ed. 1828 (1947) (induction into Army as a taking—no consent).

Declaratory relief against the United States has also been denied when the subject matter was within the exclusive jurisdiction of the Court of Claims. See Ove Gustavsson Contracting Co. v. Floete, 278 F.2d 912 (C.A.2), cert. denied, 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 188 (1960) (amount in contract suit exceeded $10,000); Powers v. United States, 218 F.2d 828 (C.A.7, 1954) (retirement benefits); Richfield Oil Corp. v. United States, 207 F.2d 864, 868, 871–872 (C.A. 9, 1953) (alternative holding) (Court of Claims remedy for claim in excess of $10,000 precludes jurisdiction based on Administrative Procedure Act); Aktiebolaget Bofors v. United States, 90 U.S. App.D.C. 92, 194 F.2d 145, 150 (1951) (amount in contract suit exceeded $10,-000). Even where mandamus or specific relief might properly lie against a Government officer, see note 2 supra, the courts have sometimes declined, most often as a matter of discretion, to issue a declaratory judgment against the official when the plaintiff has a remedy in the Court of Claims. See Almour v. Pace, 90 U.S.App.D.C. 63, 193 F.2d 699 (1951); Di Benedetto v. Morgenthau, 80 U.S.App.D.C. 34, 148 F.2d 223 (C.A. D.C.), petition for cert. dismissed on motion of petitioner, 326 U.S. 686, 66 S.Ct. 25, 90 L.Ed. 402 (1945); Western v. McGehee, 202 F.Supp. 287, 293–294 (D.Md.1962) (alternative holding); cf. Perkins v. Lukens Steel Co., 310 U.S. 113, 132, 60 S.Ct. 869, 84 L.Ed. 1108 (1940).

9. This class is illustrated by a number of examples: (*i*). The Supreme Court has indicated that the judiciary should keep its hands off executive dealings in publicly-owned real property and that inverse condemnation suits for constitutional takings should be considered the primary avenue of relief. See Malone v. Bowdoin, 369 U.S. 643, 646–648, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 703–705 & n. 27, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). In our view this attitude permeates the denials of declaratory relief in Anderson v. United States, 229 F.2d 675 (C.A.5, 1956) (Veteran's Administration disposal of condemned lands); Lynn v. United States, 110 F.2d 586 (C.A.5, 1940) (declaration of rights under deed of land made to United States); Trueman Fertilizer Co. v. Larson, 196 F.2d 910, 911 (C.A.5, 1952) (dictum) (General Services Administration's disposal of condemned lands).

(*ii*). Int.Rev.Code of 1954, § 7421(a), states: "Except as provided in sections 6212(a) and (c) and 6213(a) [suits in the Tax Court], no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any

This survey shows, we think, that we need not be daunted in our reconsideration by the great mass of the repeated observations that the declaratory device is unavailable in actions against the sovereign. We are faced, however, with a small residue of decisions truly in point, mainly those of our own authorship. The leading adverse case, Twin Cities Properties, Inc. v. United States, 81 Ct.Cl. 655 (1935), was decided the year after the Declaratory Judgment Act. Others which followed *Twin Cities*, explicitly or implicitly, are United States Rubber Co. v. United States, 160 F.Supp. 492, 500, 142 Ct.Cl. 42, 55 (1958); Prentiss v. United States, 115 Ct.Cl. 78, 81 (1949) ("in effect" a suit for a declaratory judgment); and Yeskel v. United States, 31 F.Supp. 956, 957–958 (D.N.J.1940). See also Cobb v. United States, 240 F.Supp. 574, 577–579 (W.D. Ark.1965) (construing a prayer for declaratory relief as a prayer for money judgment.)

On the other hand, Raydist Navigation Corp. v. United States, 144 F.Supp. 503 (E.D.Va.1956), holds that a court having Tucker Act jurisdiction of actions against the Government may grant a declaratory judgment. The remedy has also been held proper in comparable Government litigation under (i) the Suits in Admiralty Act,[10] (ii) the National

court." Relying on this statement of Congressional policy, rather than the Declaratory Judgment Act's specific exception for suits "with respect to federal taxes", some courts have refused to enter a declaratory judgment against the Government where the administration of the tax laws was, directly or indirectly, at issue. See Balistrieri v. United States, 303 F.2d 617 (C.A.7, 1962) (right to inspect books in possession of special revenue agent); Zito v. Tesoriero, 239 F. Supp. 354 (E.D.N.Y.1965) (dispute over property claimed, in part, by United States under revenue laws). But see Pettengill v. United States, 205 F.Supp. 10, 12 (D.Vt.1962) (alternative holding). See also note 14 infra.

(*iii*). Declaratory judgments have been refused where a writ of habeas corpus (the accepted remedy for prisoners) was unavailable, the courts saying that the petition was premature, the petitioner failed to exhaust his administrative remedies, the writ had been denied in a prior proceeding, or the petition lacked merit. See Gibson v. United States, 161 F.2d 973 (C.A.6, 1947); Innes v. Hiatt, 57 F. Supp. 17 (M.D.Pa.1944); United States v. Rollnick, 33 F.Supp. 863, 866–867 (M.D. Pa.1940).

(*iv*). Since the Interstate Commerce Act provides for relief from Commission actions, a litigant cannot "by-pass the statutory requirements and then rely on his refusal to follow the statutory procedure as creating the 'actual controversy' contemplated in the Declaratory Judgment Act." Isner v. ICC, 90 F.Supp. 361, 366 (E.D.Mich.1950).

(*v*). Where Congress has made "the recommendation of the head of the Agency and the approval of the Civil Service Commission conditions precedent to the granting of these higher [retirement] benefits, [and] *has not* laid down any rules under which the recommendations of the head of the agency shall be granted", a judicial probe of the officials' reasoning " 'would amount to a clear invasion of the legislative and executive domains.' " Gibney v. United States, 146 F.Supp. 135, 140 (S.D.Cal.1956), quoting United States v. George S. Bush & Co., 310 U.S. 371, 380, 60 S.Ct. 944, 84 L.Ed. 1259 (1940). A similar rationale appear in Wells v. United States, 280 F.2d 275 (C.A.9, 1960), in which the court was asked to render a declaratory judgment relating to what it considered an unreviewable Atomic Energy Commission determination of the proper sale price for Government lands leased by the AEC to the plaintiff.

Some of the cases in this and the preceding note were brought against a public officer in addition to, or rather than, the United States. Even though the courts tended to treat the suits as "in effect" against the United States or to separate the issues of the suability of the sovereign and that of the officer, the practical unavailability (to courts other than those in the District of Columbia) of general mandamus power in suits against Government officials obviously made the judges less inclined to grant declaratory relief against either the United States or the named officials. Under 28 U.S.C. §§ 1331(a), 1361, 1391(e) (1964), the power to issue relief in the nature of mandamus is now available to all district courts. E. g., Ashe v. McNamara, 355 F.2d 277, 279 (C.A.1, 1965). See also note 2 supra.

10. See Luckenbach S.S. Co. v. United States, 312 F.2d 545 (C.A.2, 1963); American-Foreign S.S. Corp. v. United

Service Life Insurance Act,[11] (iii) the Trading With the Enemy Act,[12] (iv) the Federal Tort Claims Act (at least as a "procedural step" toward obtaining damages),[13] and (v) 28 U.S.C. § 2410 (1964), which provides for actions to quiet title to property on which the United States has or claims a mortgage or other lien.[14]

Despite *Twin Cities* and its influence, this court has indicated in recent years that the question is still open and that declaratory relief may possibly lie against the Government. In Luckenbach S.S. Co. v. United States, 292 F.2d 913, 155 Ct.Cl. 81 (1961), the opinion not only took the position that a declaratory judgment could be entered against the United States by a district court sitting in admiralty and administering the Suits in Admiralty Act (292 F.2d at 916–917, 155 Ct.Cl. at 85–87), but rebutted in a lengthy footnote the plaintiff's broader argument that declaratory relief can never run against the sovereign (292 F.2d at 916 n. 5, 155 Ct. at 85 n. 5). (The note cited the cases, supra, holding declaratory relief available under the Federal Torts Claim Act and the Tucker Act, as it applies to the district courts.) Furthermore, in Eastport S.S. Corp. v. United States, 372 F.2d 1002, 178 Ct.Cl. 599 (1967), when discussing the limits of our jurisdiction, we expressly "put to one side the possible applicability of the Declaratory Judgment Act * * *." 372 F.2d at 1007 n. 5, 178 Ct.Cl. at 605 n. 5.

While the Supreme Court has never reviewed the bearing of the Declaratory Judgment Act on Tucker Act controversies,[15] it has often mentioned, in other

States, 291 F.2d 598, 604 (C.A.2), cert. denied, 368 U.S. 895, 82 S.Ct. 171, 7 L.Ed. 2d 92 (1961); American President Lines v. United States, 162 F.Supp. 732, 739 (D.Del.1958), aff'd per curiam, 265 F.2d 552 (C.A.3, 1959). Compare American Mail Line v. United States, 213 F.Supp. 152, 160 (W.D.Wash.1962). In 1961 the Rules of Practice in Admiralty and Maritime Cases were amended to provide for declaratory relief in admiralty suits. See Luckenbach S.S. Co. v. United States, 292 F.2d 913, 917 n. 6, 155 Ct.Cl. 81, 86 n. 6 (1961). With the 1966 consolidation of the admiralty and civil procedure rules, F.R.Civ.P. 57, which is identical to the 1961 admiralty rule, applies to district courts sitting in their admiralty capacity.

11. See Unger v. United States, 79 F.Supp. 281, 283–284 (E.D.Ill.1948). Compare Birge v. United States, 111 F.Supp. 685 (W.D.Okl.1953); Schilling v. United States, 101 F.Supp. 525 (E.D.Mich.1951).

12. See Brownell v. Ketcham Wire & Mfg. Co., 211 F.2d 121, 128 (C.A.9, 1954). In Schilling v. Rogers, 363 U.S. 666, 80 S.Ct. 1288, 4 L.Ed.2d 1478 (1960), the Court held no more than that, since the provision at issue (Section 32(a)) did not provide for judicial review, the district court was without jurisdiction to enter a declaratory judgment. Although it did not cite the Ninth Circuit case, the Court pointed out that Section 9(a), which was the basis of Ketcham Wire, does allow judicial review. See 363 U.S. at 671, 80 S.Ct. 1288.

13. See Pennsylvania R.R. v. United States, 111 F.Supp. 80, 85–89 (D.N.J.1953). But see Aktiebolaget Bofors v. United States, 93 F.Supp. 134 (D.D.C.1950) (semble), aff'd on other grounds, 90 U.S. App.D.C. 92, 194 F.2d 145 (1951). The Tort Claims Act gives the district courts exclusive jurisdiction of "civil actions on claims against the United States, *for money damages.*" 28 U.S.C. § 1346(b) (1964) (emphasis added).

14. See Pettengill v. United States, 205 F. Supp. 10, 12 (D.Vt.1962) (alternative holding). But see Zito v. Tesoriero, 239 F.Supp. 354 (E.D.N.Y.1965). In Sonitz v. United States, 221 F.Supp. 762, 764 (D.N.J.1963), the court held that resort to the Declaratory Judgment Act is unnecessary in a Section 2410 suit since an action to quiet title is, in essence, a declaratory action. See also, e. g., S.Rep. 1005, 73d Cong., 2d Sess. 4–5 (1934). This is implicit in other leading cases in the area since no reference is made to the Declaratory Judgment Act. See, e. g., Falik v. United States, 343 F.2d 38 (C.A.2, 1965).

15. In Dismuke v. United States, 297 U.S. 167, 56 S.Ct. 400, 80. L.Ed. 561 (1936), affirming on other grounds 76 F.2d 715 (C.A.5, 1935), the Court scrutinized a decision in which the district court had entered a declaratory judgment that the plaintiff was entitled to a certain level of benefits under the Civil Service Retirement Act. See 76 F.2d at 716. Although the Court held that the district court had Tucker Act jurisdiction, it denied relief

contexts, that the Court of Claims "has been given jurisdiction only to award money damages * * *." Glidden Co. v. Zdanok, 370 U.S. 530, 557, 82 S.Ct. 1459, 1476, 8 L.Ed.2d 671 (1962); see, e. g., United States v. Jones, 336 U.S. 641, 670, 69 S.Ct. 787, 93 L.Ed. 938 (1949); United States v. Sherwood, 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). As discussed in Part III infra, we do not believe that the concept of "money judgment" jurisdiction precludes declaratory relief. We are therefore free, as we see it, of any Supreme Court mandate, and need grapple only with *Twin Cities* and the other holdings we have ourselves fathered.

## II

██ Looking at the problem as if for the first time, one could not help but note that the Declaratory Judgment Act, quoted in full supra, provides that "*any court of the United States * * * may declare the rights and other legal relations of any interested party seeking such declaration.*" [Emphasis added.][16] On its own terms, "any court of the United States" would normally call for the inclusion of the Court of Claims. See Kamen Soap Prods. Co. v. United States, 110 F.Supp. 430, 435, n. 5, 124 Ct.Cl. 519, 530 n. 5 (1953) (term as used in statute authorizing issuance of *subpoenae duces tecum*); cf. Luckenbach S.S. Corp. v. United States, supra, 292

F.2d at 916–917, 155 Ct.Cl. at 86 (term as used in Declaratory Judgment Act includes admiralty court); American-Foreign S.S. Corp. v. United States, supra note 10, 291 F.2d at 604 (same). Even in Ex Parte Bakelite Corp., 279 U.S. 438, 49 S.Ct. 411, 73 L.Ed. 789 (1929), the Supreme Court, while declining to consider this court a constitution court, referred to it as "a court of the United States." 279 U.S. at 455, 49 S.Ct. at 415. (The constitutional—Article III—status of the Court of Claims is now firmly established. Glidden Co. v. Zdanok, 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962); 28 U.S.C. § 171 (1964).)

Nonetheless, our court in *Twin Cities* thought the language not clear enough:

We think the defendant's motion [to dismiss for lack of jurisdiction] should be sustained. In the case of Pocono Pines Assembly Hotels Co. v. United States, [73 Ct.Cl. 447, motion to file petition for writ of mandamus and/or prohibition denied, 285 U.S. 526, 52 S.Ct. 392, 76 L.Ed. 923 (1932)], we had occasion to discuss *in extenso* the jurisdiction of this court, and in view of the axiomatic legal principle that the United States may not be sued without its consent, we think it exacts a specific statute according such consent and expressly conferring jurisdiction upon this court before we may proceed. United States v. Milliken Im-

on the merits of the claim. In doing so, it merely noted, without discussion, that declaratory relief had been requested. See 297 U.S. at 168–169, 56 S.Ct. 400. In Savorgnan v. United States, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287 (1950), affirming 171 F.2d 155 (C.A.7, 1948), reversing 73 F.Supp. 109 (W.D.Wis. 1947), the Court recited that the court of appeals had reversed the district court's entry of a judgment against the Government (as well as certain officials) declaring that plaintiff was a United States citizen and had "remanded the case with directions to dismiss the petition against the United States because it had not consented to be sued * * *." 338 U.S. at 494, 70 S.Ct. at 294. Although the instruction of the court of appeals was repeated in the Supreme Court's own

disposition (see 338 U.S. at 506, 70 S.Ct. 292), the Court, holding against the plaintiff on the merits, did not discuss this issue. It is apparent that the basis of the court of appeals' statement was the lack of consent to any suit against the United States, as such, involving nationality, regardless of the remedy sought. As for the Supreme Court's "nominal damages" cases, see note 7 supra. For the reasons stated there, we do not think them pertinent.

16. Prior to the 1948 codification and revision of Title 28, the phrase read: "the courts of the United States." The change in phraseology was said by the revisers to be inconsequential. See 28 U.S.C. at 6026 (1964) (reviser's notes). See Part V infra.

printing Co., [202 U.S. 168, 26 S.Ct. 572, 50 L.Ed. 980 (1906)]; Eastern Transportation Co. v. United States, [272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472 (1927)]; United States v. Michel, [282 U.S. 656, 51 S.Ct. 284, 75 L.Ed. 598 (1931)].

If Congress had intended to extend the scope of this court's jurisdiction and subject the United States to the declaratory judgment act, we think express language would have been used to do so, and the court is not warranted in assuming an intention to widen its jurisdiction from the general provisions of the act which concerns a proceeding equitable in nature and foreign to any jurisdiction this court has heretofore exercised. [81 Ct. Cl. at 658.]

■ The initial part of this rationale simply repeats the undeniable proposition that the Court of Claims' jurisdiction is dependent upon and delimited by the United States' consent to be sued and that the consent must be found in legislative enactments. See, e. g., United States v. Sherwood, supra, 312 U.S. at 586, 61 S.Ct. 767, 85 L.Ed. 1058. The cases cited stand for that premise and, for present purposes, no more.[18] In the crucial second paragraph of the quotation, the *Twin Cities* court expresses the view that allowance of declaratory relief would expand the Tucker Act jurisdiction of the court beyond its accepted limits; that Congress, if it meant to consent to the expansion, would have re-

ferred to the court by name in the Declaratory Judgment Act; and that, since Congress did not, the court has no warrant to assume declaratory power.

Unlike our predecessors, we believe that (a) the use of declaratory procedures is consistent with the factors historically relevant to defining and delimiting this court's jurisdiction; (b) such use need not expand the categories of claims or issues which we may consider; and (c) Congress has indicated with sufficient clarity that the court is empowered to apply the Declaratory Judgment Act. We consider the first point in Part III, the second in Part IV, and the third in Part V.

### III

When this court had barely emerged from its cocoon, the Supreme Court stated in United States v. Alire, 6 Wall. 573, 18 L.Ed. 947 (1867), that under the 1855 and 1863 Acts establishing the court (Act of Feb. 24, 1855, ch. 122, 10 Stat. 612; Act of March 3, 1863, ch. 92, 12 Stat. 765) "the only judgments which the Court of Claims [was] authorized to render against the government * * * [were] judgments for money found due from the government to the petitioner." 6 Wall. at 575. This was reiterated two decades later in United States v. Jones, 131 U.S. 1, 9 S.Ct. 669, 33 L.Ed. 90 (1889), in which the Court held that the passage of the Tucker Act in 1887, ch. 359, 24 Stat. 505, had not enlarged the perimeter drawn in *Alire*. All subsequent decisions referring to "money

---

18. *Pocono Pines* contains a lengthy discussion of the history of this court, in the course of which it is noted that the Government must consent to be sued. See 73 Ct.Cl. at 485. The spring for this discussion was an Act of Congress appearing to order the court to grant a new trial for the Government after a final judgment had been rendered against it. To avoid the constitutional problems of the Act, the court construed it as a Congressional reference case requesting findings of fact to aid Congress in its legislative function of appropriating monies for the satisfaction of the judgment. Milliken holds that Congress, through the Tucker Act, consented to suit on a claim

for money on a contract as reformed even though reformation is equitable and not an incident to an action at law. 202 U.S. at 173–174, 26 S.Ct. 572. In *Eastern Transportation*, involving a maritime libel against the United States under the Suits in Admiralty Act, the Court held that there is a presumption against the suability of the Government which must be overcome by statute. See 272 U.S. at 686, 47 S.Ct. 289. The *Michel* opinion utilizes the traditional principle that statutes of limitations applicable to suits against the sovereign are strictly construed. See 282 U.S. at 660, 51 S.Ct. 284.

judgment" or "money claim" jurisdiction under the Tucker Act are traceable to *Alire* and *Jones*. The court in *Twin Cities* apparently believed that this firm concept of money-judgment jurisdiction would be violated by the issuance of a declaratory judgment. We can no longer accept that position.

1. *Alire* and *Jones* dealt with prayers for specific equitable relief relating to public lands, not requests for declaratory judgment.[19] In the course of denying the relief sought in *Alire,* the Court conceded that the 1855 and 1863 Acts established a wide range of "subject-matter over which jurisdiction is conferred," [20] but went on to hold that "the limited power to render a judgment necessarily restrains the general terms" of the statutes. 6 Wall. at 575–576. Since, as construed by the Court, Section 7 of the 1863 Act was "the only one providing for the rendition of a judgment or decree in any case" in the Court of Claims and since Section 7 contemplated solely the payment by the Government of money claims, the Court concluded that Congress had confined "the subject-matter to cases in which the petitioner sets up a moneyed demand as due from the government." 6 Wall. at 576. In *Jones* the Court adhered to this reasoning, holding that the Tucker Act of 1887 had not altered the statutory basis of *Alire* and adding that "we should have been somewhat surprised to find that the administration of vast public interests, like that of the public lands, which belongs so appropriately to the political depart-

ment, had been cast upon the courts * * *." 131 U.S. at 19, 9 S.Ct. at 672.

*Alire* and *Jones* are thus grounded in two distinct considerations. First, this court's jurisdiction must be defined in terms of the available remedies if Congress has provided means for effectuating only certain forms of relief; and the Tucker Act envisioned the satisfaction solely of money judgments. Second, in the absence of specific legislative authority, the Court was extremely wary of coercing, by means of specific relief, the conduct of public officials, a factor highlighted by the judicial reluctance to become involved in the administration of public lands and Government property. See also note 9 supra.

▰▰ Neither of these reasons counsels against the availability of declaratory relief in Tucker Act suits. Since no performance by, or execution on, the defendant is sought in a prayer for declaratory relief, no further mechanism for the satisfaction of the plaintiff's claim is required when a court grants a declaration. See, e. g., Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671–672, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); Nashville, C. & St. L. Ry. v. Wallace, 288 U.S. 249, 263–264, 53 S.Ct. 345, 77 L.Ed. 730 (1933); E. Borchard, Declaratory Judgments 25–26 (2d ed. 1941). The Act states that the courts may *"declare* the rights and other legal relations of any interested party seeking such declaration, *whether or not further relief is or could be sought."* [Emphasis added.] The decla-

19. The judgment or decree entered by this court in *Alire* (and reversed by the Supreme Court) was "that the claimant recover of the government a military land warrant for one hundred and sixty acres of land, and that it be made out and delivered to * * * [the plaintiff] by the proper officer, and the decree to be remitted to the Secretary of the Interior." 6 Wall. at 576. In *Jones* the plaintiffs sought, under the Tucker Act provision granting concurrent jurisdiction to the district and then circuit courts, "equitable relief by specific performance, to compel the issue and delivery of a [timber] patent." 131 U.S. at 14, 9 S.Ct. at 670.

20. Section 1 of the 1855 Act provided that the "court shall hear and determine all claims founded upon any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied with the government of the United States * * *." Section 2 of the 1863 Act listed "all petitions and bills praying or providing for the satisfaction of private claims against the Government, founded upon any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States * * *."

ration is enough by itself. Conversely, no legislation, beyond the Declaratory Judgment Act, is needed to enable a court to grant full declaratory relief. The lack of provision in the Tucker Act for satisfaction or enforcement of judgments other than money judgments is therefore irrelevant.

Since *Jones* and *Alire* it has become axiomatic that this court has no direct power to grant specific equitable relief (injunctions, mandamus, restraining orders, and the like) on a claim, and cannot have unless Congress grants that power. See, e. g., cases cited note 4 supra; S.Rep. No. 261, 83d Cong., 1st Sess. 2, 6 (1953); 99 Cong.Rec. 8943–44 (1953).[21] But a declaratory judgment is not a form of specific relief or, strictly speaking, an equitable remedy. Although considerations relevant to the issuance of various forms of equitable relief are also pertinent to the use of the Declaratory Judgment Act (see, e. g., Eccles v. Peoples Bank, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948); Wacker v. Bisson, 348 F.2d 602, 607 (C.A.5, 1965)) and the historical origins of declaratory relief are in equity (see *Borchard* at 237–241), the procedure "is neither distinctly in law nor in equity, but sui generis" (S.Rep. No. 1005, 73d Cong., 2d Sess. 6 (1934); see Sanders v. Louisville & N. R. R., 144 F.2d 485, 486 (C.A.6, 1944)). The *Twin Cities* opinion oversimplified the case when it referred to the Declaratory Judgment Act as creating "a proceeding equitable in nature" and therefore precluded by the strictures of *Alire* and *Jones* against specific equitable relief.

Nor is the nature of declaratory relief such that we should put it away because of the Court's concern in *Alire* and, especially, *Jones* about direct coercion of public officials. Any judgment of this court will inevitably have a restraining effect upon Government operations. This is true of money judgments even though we have no power to execute upon them and their satisfaction depends upon a Congressional appropriation of funds. See generally Glidden Co. v. Zdanok, 370 U.S. 530, 568–571, 82 S.Ct. 1459, 8 L.Ed. 2d 671 (1962). A judgment awarding money to a particular plaintiff can be authoritative information to officials that their conduct was unlawful and that, unless their position is altered, similar judgments may be rendered in the future. See Friedman v. United States, 310 F.2d 381, 387, 159 Ct.Cl. 1, 11 (1962), cert. denied, 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). A declaratory judgment has this same effect, whether or not affirmative relief (monetary or specific) is ever granted the plaintiff. See *Borchard* at 876, 896.

Nevertheless, the coercive effect of money and declaratory judgments differs markedly from that of the specific equitable sanctions. For the former, the impact stems from the volitional reaction of a responsible government in conforming its conduct to the pronouncements of an authoritative tribunal, not from fear of the personal consequences to the delinquent official or the use of force at the behest of the court. In contrast, specific equitable relief is directed at an identifiable res, a particular individual, or both, and usually commands obedience subject to the drastic compulsive powers possessed by the judiciary.[22] See United States v. Boutwell, 17 Wall. 604, 607, 21 L.Ed. 721 (1873); United States ex rel. Touhy v. Ragen, 340 U.S. 462, 472–473, 71 S.Ct. 416, 95 L.Ed. 417 (1951) (Frankfurter, J., concurring); Land v. Dollar, 88 U.S.App.D.C. 311, 190 F.2d 366, 623, cert. granted, 341 U.S. 737, 71 S.Ct. 987, 95 L.Ed. 1331 (1951) (per curiam opinion), cert. dismissed on motion of petitioner, 344 U.S. 806, 73 S.Ct. 7, 97 L.Ed.

---

21. The full effect of the second part of the Declaratory Judgment Act, § 2202 ("Further relief"), supra, as it pertains to this court, is obviously not now before us.

22. In an enlightened government, direct coercion is rarely necessary "for very few officials are likely to violate their duties and exceed their powers, when these are conclusively delimited and declared by the decision of a court." Borchard at 876.

628 (1952). Compare State of Mississippi v. Johnson, 4 Wall. 475, 500–501, 18 L.Ed. 437 (1866).

The Senate Judiciary Committee recognized this difference when it supported the passage of the federal Act with the observation that "[m]uch of the hostility to the extensive use of the injunction power by the Federal courts will be obviated by enabling the courts to render declaratory judgments." S.Rep. No. 1005, 73d Cong., 2d Sess. 3 (1934); cf. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (Dec. 5, 1967). In our judgment, the clear distinction between declaratory and specific relief supports the conclusion that the *Alire-Jones* rationale should not be extended past the latter to encompass a procedure that differs little, in the nature of its restraining force, from the money judgments traditionally entered by the Court of Claims.

*2.* There are, of course, other important similarities between our present practice and declaratory relief. Because no execution can be had on our money judgments, the declaratory technique has often been compared to Tucker Act procedure. The Supreme Court relied on this analogy in upholding the constitutionality of a state's declaratory judgment act. See Nashville, C. & St. L. Ry. v. Wallace, 288 U.S. 249, 263, 53 S.Ct. 345, 77 L.Ed. 730 (1933). As the Senate Judiciary Committee stated, "The decisions of the United States Court of Claims are essentially declaratory in nature, for they provide for no execution." S.Rep. No. 1005, 73d Cong., 2d Sess. 5 (1934).

Moreover, pursuant to Court of Claims Rule 47(c) "a trial may be limited to the issues of law and fact relating to the right of a party to recover, reserving the amount of recovery, *if any*, for further proceedings" and "the judgment on the question of the right to recover shall be final." [Emphasis added.] In a great number of cases utilizing Rule 47(c) we have, in effect, declared the liability of the defendant before it was determined whether there would be any money award at all.[23] E. g., Shaw v. United States, 357 F.2d 949, 174 Ct.Cl. 899 (1966). Like a formal declaratory judgment, a decree of liability entered under the rule is a mere statement of rights, though it too may be (but not surely) the basis for the recovery, in the future, of money.[24] In some instances, we have declared the claimant entitled, although in the very same opinion we have concluded that he could not recover any money; a recent example is Everett v. United States, 340 F.2d 352, 169 Ct.Cl. 11 (1965), where a federal employee who was held illegally discharged was at the same time barred from a money judgment because he could not prove that he was able to work during the period of his wrongful removal. In practical effect *Everett* and like decisions are fully equivalent to the declaratory judgment which the present plaintiff would seek.

 Again, money judgments and declaratory judgments are both res judicata in later suits between the parties. Declarations have, by statute, "the force and effect of a final judgment or decree" and, therefore, collaterally estop the litigants from retrying issues. See, e. g., Green v. United States, 172 F.Supp. 679, 145 Ct.Cl. 628 (1959). The doctrine of collateral estoppel also applies to a money judgment, even though the recovery is usually limited to the amount accrued by the judgment date. See Moser v. United

---

**23.** It is not unknown for a plaintiff with a holding of liability to find himself unable to obtain a money judgment. In contract matters he may be unable to prove damages; in personnel removal cases (civilian or military) he may have had more outside earnings than his government pay or he may be unable to prove that he was ready, willing, and able to work during his unlawful separation.

**24.** The second section of the Declaratory Judgment Act, §. 2202, provides: "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing against any adverse party whose rights *have been determined* by such judgment." [Emphasis added.] The parallel to Rule 47(c) is obvious.

States, 42 Ct.Cl. 86 (1907); 49 Ct.Cl. 285 (1914), appeal dismissed on motion of appellant, 239 U.S. 658, 36 S.Ct. 445, 60 L.Ed. 489 (1915); 53 Ct.Cl. 639 (1918); 58 Ct.Cl. 164 (1923), aff'd, 266 U.S. 236, 45 S.Ct. 66, 69 L.Ed. 262 (1924).[25]

The sum of it is that this manifold kinship between our money awards and declaratory judgments presses us to disagree strongly with the conclusion in *Twin Cities* that the Declaratory Judgment Act "concerns a proceeding * * * foreign to any judisdiction this court has heretofore exercised." On the contrary, the "foreign" proceeding is a very close and domestic relative indeed.

*3.* Furthermore, to countenance declaratory proceedings in this court would not subject the Government to strange and alien practices. The United States has instituted many declaratory actions. See, e. g., Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967); State of Wyoming v. United States, 310 F.2d 566 (C.A.10, 1962), cert. denied, 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 977 (1963); Mashunkashey v. United States, 131 F.2d 288, 290–291 (C.A.10, 1942), cert. denied, 318 U.S. 764, 63 S.Ct. 665, 87 L.Ed. 1136 (1943). More important, actions for declaratory relief against Government officers are often brought in the district courts (see note 2 supra), and the issues in many of those cases clearly could and do form the basis for Tucker Act suits against the United States in this court. Examples are suits relating to removal of an employee, discharge or separation of a soldier, retirement pay of officers, or court-martial orders dismissing a serviceman.

For the past decade we have consistently held that district court declaratory judgments against public officers will usually collaterally estop both the plaintiff and the United States from relitigating the issues here. See Technograph Printed Circuits, Ltd. v. United States, 372 F.2d 969, 974–975, 178 Ct.Cl. 543, 550–551 (1967); Green v. United States, 172 F.Supp. 679, 145 Ct.Cl. 628 (1959); Edgar v. United States, 171 F.Supp. 243, 145 Ct.Cl. 9 (1959); Larsen v. United States, 170 F.Supp. 806, 145 Ct.Cl. 178 (1959); Williams v. United States, 139 F.Supp. 951, 134 Ct.Cl. 763 (1956).[26] But see Marshall v. Crotty, 185 F.2d 622, 628 (C.A.1, 1950). Compare O'Brien v. United States, 148 Ct.Cl. 1 (1960) (laches). Thus, in actual practice, the Government has long been subject to binding declaratory judgments involving certain Tucker Act causes of action.

## IV

It is implicit in what we have said that use of the Declaratory Judgment Act need not, and will not, be used to expand the classes of claims or issues which this court may consider. The Act itself states that a court may adopt the procedure only in cases "within its jurisdiction." The Supreme Court has unequivocally held that, with the enactment of the federal statute, "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction". The Court said that "jurisdiction", in this context, "means the kinds of issues which give right of entrance to federal courts." Skelly Oil Co. v. Phillips Petroleum Co.,

---

25. This is a famous series of cases in which the claimant sued, successively and successfully, for his pay when the military refused for a great number of years to acquiesce in this court's original ruling. The Comptroller General has adhered to the *Moser* principle, thus making it unnecessary for litigants to continually prosecute claims already adjudicated by the court. See 44 Comp.Gen. 821, 822–23 (1965) (No. B–141326); 36 Comp. Gen. 501 (1957) (No. B–6882); 36 Comp. Gen. 489, 491–92 (1957) (No. B–114422).

26. Two earlier cases to the contrary (O'Brien v. United States, 124 Ct.Cl. 655 (1953), and Levy v. United States, 118 Ct.Cl. 106 (1950), overruled in subsequent order, 169 Ct.Cl. 1020, 1023, cert. denied, 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965)) were disapproved in Edgar v. United States, supra, 171 F. Supp. at 248, 145 Ct.Cl. at 16.

339 U.S. 667, 671, 70 S.Ct. 876, 879, 94 L.Ed. 1194 (1950).[27]

For this court "the kind of issue which gives right of entrance" is declared, for the most part, by our general jurisdictional statute, now 28 U.S.C. § 1491 (1964).[28] There must be a "claim" and it must be "against the United States". The cause of action has to be founded upon the Constitution, a statute, a regulation, or a contract, or be non-tortious in character. Historically, also, the area with which we have dealt has been that of controversies with a money cast—cases tied in some way to a demand or call upon the Government for the payment of money to the claimant, either because his money (or property) was wrongfully taken by (or handed over to) the United States or because the United States owes or will owe him money on account of some contract or provision of law. See Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1007–1009, 178 Ct.Cl. 599, 605–607 (1967); cf. Ralston Steel Corp. v. United States, 340 F.2d 663, 667, 169 Ct.Cl. 119, 125, cert. denied, 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965); South Puerto Rico Sugar Co. Trading Corp. v. United States, 334 F.2d 622, 626–627, 167 Ct.Cl. 236, 244–245 (1964), cert. denied, 379 U.S. 964, 85 S.Ct. 654, 13 L.Ed.2d 558 (1965). But for a suit to have such a money cast does not require (as we have pointed out) that the plaintiff immediately seek a money judgment from this court or even that he ever seek such a judgment. What it does mean is that the claimant, if he does not ask for a money judgment, pray for this court's help in order to be in a position to collect money from the United States, sometime in the future. Such an action has a money cast and is money-oriented—can, in other words, properly be called a "money claim" or at least a "money-related claim" against the Federal Government—in the realistic sense that the plaintiff's declaratory judgment, if he prevails, will lead to his being able to receive money from the Government, if he chooses, perhaps immediately after the judgment or perhaps at some future time. The claim for money may not be current or immediate but it is at least potential, and the action is therefore linked to the recovery of money from the Government.

The present plaintiff's case will illustrate. If he receives a declaratory judgment, Colonel King will not have a money judgment from us. But his claim will nevertheless have a monetary cast. He can use his declaration, perhaps, to obtain administratively from the Army an amount equivalent to the taxes he has paid since 1959 on his retirement pay, but which he cannot recover judicially in this suit because he failed to file proper refund claims with the Internal Revenue Service. At the least his declaration will lead the Army, presumably, to change its records for the future as to the nature of his retirement and thereafter to pay him future retirement pay on the basis of disability retirement, i. e., without any deduction for taxes. If the Army remains obdurate, he can use his declaration as the predicate for a further suit in this court asking a money judgment for the amount withheld after the declaration.

**27.** The opinion added: "Prior to that [the Declaratory Judgment] Act, a federal court would entertain a suit on a contract only if the plaintiff asked for an *immediate* enforceable remedy like money damages or an injunction, but such relief could only be given if the requisites of jurisdiction, in the sense of a federal right or diversity, provided foundation for resort to the federal courts. The Declaratory Judgment Act allowed relief to be given by way of recognizing the plaintiff's right even though no immediate enforcement of it was asked. But the requirements of jurisdiction—the limited subject matters which alone Congress had authorized the District Courts to adjudicate —were not impliedly repealed or modified." 339 U.S. at 671–672, 70 S.Ct. at 879.

**28.** "The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

In short, we can properly anticipate that, if plaintiff prevails on the merits and secures a declaratory judgment, he will in the future be able to receive money from the United States to which he is entitled. On this view he plainly has a monetary claim or demand against the Government, actual and potential—a money-related claim, if you will—even though he cannot now have a money *judgment* from the court.

Another example comes from Raydist Navigation Corp. v. United States, supra, 144 F.Supp. 503, the district court decision holding declaratory relief open in a Tucker Act suit. That plaintiff's 1951 contract with the Government had been completed and the final payment made when the contracting officer requested a voluntary refund. This was not forthcoming, and the defendant deducted a sum from one of the partial payment invoices submitted by the plaintiff in connection with another, entirely unrelated, contract awarded in 1955. The court denied a motion to dismiss the plaintiff's action for a declaratory judgment, reasoning:

> Such an action is peculiarly applicable to this case as plaintiff alleges that it is engaged in contracts with other agencies of the Government, that it intends to continue to bid on such contracts, and that reopening of closed contracts permitting alleged arbitrary and unlawful deductions would seriously jeopardize the security of all contracts made with the United States or any agency thereof. [144 F.Supp. at 505–506.]

The contractor, it is clear, had a monetary claim although it did not, and could not at that time, seek a money judgment; if the court upheld its position, the defendant would no doubt discontinue deductions from payments on the unrelated contracts and credit the plaintiff with the sums already deducted. In that way the plaintiff could, and probably would, use the declaration to obtain money from the United States to which plaintiff had a legal right. Other examples, briefly, come from the civilian employee whose declaration that he was illegally discharged by the Government can aid him in obtaining reinstatement to the old post or a new federal job, and therefore a place once again on the payroll; or the serviceman whose declaration that his discharge was wrongful can likewise lead to his reinstatement or new enlistment.

■ All we hold today is that claimants with this type of case traditionally within our purview—claims against the Federal Government with a money cast, money-oriented, related to the immediate or ultimate recovery of money (administratively or judicially) from the United States—can seek declaratory judgments from us (if the other proper requisites exist) although they are unable to request or obtain a money judgment. That use of the Declaratory Judgment Act will surely not extend our jurisdiction or contravene 28 U.S.C. § 1491, supra. Whether there are other classes (i. e., non-money-related cases) in which a declaratory proceeding can validly be offered by this court we leave open for further development. At the least, plaintiff's category falls this side of the jurisdictional boundary.

■ Of course, a declaratory proceeding could not be used for money-related claims which this court cannot consider. It would have made no difference, for instance, if the plaintiff in Eastport S.S. Corp. v. United States, supra, 372 F.2d 1002, 178 Ct.Cl. 599, had framed a demand for a declaratory judgment, or both such a decree and a money award, instead of solely for damages. Claimants with tort claims against the Government, or other causes of actions over which we have no power, cannot evade the subject-matter limitations on our jurisdiction by refashioning their actions in the terms of a declaratory proceeding. So also, specific relief otherwise unavailable here (injunction, mandamus, specific performance, prohibition orders *in rem*) cannot be obtained in violation of the *Alire-Jones*

doctrine.[29] Nor can a claim which is not in reality against the Government be camouflaged as such in the guise of a declaratory proceeding. For a money-related claim against the United States, all that can happen under the Declaratory Judgment Act as applied in this court is that the plaintiff's right, if it is within our competence, will be recognized "even though no immediate enforcement of it [is] asked." Skelly Oil Co. v. Phillips Petroleum Co., supra, 339 U.S. at 672, 70 S.Ct. at 879.

We are quite aware that the application of the remedy may raise novel, and perhaps difficult, issues relating to the statutes of limitations (see, e. g., note 6 supra); to exhaustion of administrative determinations (c. f., e. g., Macauley v. Waterman S.S. Corp., 327 U.S. 540, 545 n. 5, 66 S.Ct. 712, 90 L.Ed. 839 (1946), reversing sub nom. Waterman S.S. Corp. v. Land, 80 U.S.App.D.C. 167, 151 F.2d 292 (1945); Ogden v. Zuckert, 111 U.S. App.D.C. 398, 298 F.2d 312 (1961)); to piecemeal litigation of causes of action, especially in contract cases (see Nager Elec. Co. v. United States, 368 F.2d 847, 855–856, 177 Ct.Cl. 234, 245–246 (1966), and cases cited); and, more generally, to the determination, when the petition is for declaratory relief, whether the matter is a justiciable controversy within our jurisdiction.

■ But these problems are by no means insuperable, and we will face them as they arise without attempting now to lay down standards for the application of the Act that will cover all cases at all times. Our endeavor to accommodate the declaratory proceeding to our practice will be aided not only by the large body of decisional law in other courts but by the discretion which Congress has distinctly allowed the federal courts in employing this remedy. As the Supreme Court emphasized, after capsuling the conventional blackletter rules governing declaratory relief:

"[W]hen all of the axioms have been exhausted and all words of definition have been spent, the propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power. While the courts should not be reluctant or niggardly in granting this relief in the cases for which it was designed, they must be alert to avoid imposition upon their jurisdiction through obtaining futile or premature interventions, especially in the field of public law. [Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 243, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952).]

Scores of decisions prove that this power to refuse declaratory relief as a matter of discretion is not empty. We too can exercise that authority.

## V

Because the term "any court of the United States" in the operative clause of the Declaratory Judgment Act strongly suggests the inclusion of the Court of Claims and because we believe that declaratory relief is consistent with the concept of money-judgment jurisdiction established by *Alire* and *Jones,* that it need not be used to expand our jurisdiction, and that it would not result in the exposure of the sovereign to an alien remedy, we do not require, as the court in *Twin Cities* did, a totally unambiguous Congressional statement vesting us with the authority to grant declaratory relief against the United States. See Raydist Navigation Corp. v. United States, supra, 144 F.Supp. at 505; cf. Unger v. United States, supra note 11, 79 F.Supp. at 283–284. We think it suffices if Congress failed to give any meaningful indication that this reform—introduced many years after the Tucker Act and in language

---

**29.** As already indicated (note 21 supra), we do not now reach or consider any right this court may have to give specific relief under 28 U.S.C. § 2202 as ancillary to a declaration previously given.

covering our court and our cases—should not be applicable. Cf. American-Foreign S.S. Corp. v. United States, supra note 10, 291 F.2d at 604. As we shall now point out, the legislative record is free of any such purpose.

1. The first proposal for a federal declaratory judgment statute was introduced in 1919. From then until the Act was passed in 1934, the House Judiciary Committee held short hearings on two occasions [30] and issued brief favorable reports seven times; [31] the House debated the issue in six different years,[32] passing a declaratory judgment bill four times.[33] Although Senate hearings were held in 1927,[34] the Senate Judiciary committee did not report until 1934.[35] In that year, the Senate first passed its own version of the legislation and then adopted the House-passed bill.[36]

The focus of the discussions in the hearings, reports, and debates was on the constitutionality of the bill, its res judicata implications, and whether declaratory relief should be allowed unless all interested parties consented to the procedure. Nowhere is there any specific consideration of the applicability of the remedy to the Court of Claims or to Tucker Act litigation. Though a number of statements made in other contexts could be interpreted as bearing on the issue, all are, at best, ambiguous.

First, in the reports and during floor debate, the legislators referred to the procedure as applicable in the "Federal courts", a term intimating inclusion of every court in the federal judicial system. See, e. g., S.Rep.No. 1005, 73d Cong., 2d Sess. 1 (1934); 69 Cong.Rec. 1681, 1685, 1686 (1928) (remarks of Representatives Celler, Dyer and Newton); 78 Cong.Rec. 10565 (1934) (remarks of Senator Robinson). Second, the expected benefits of the Act were illustrated by the citation of cases from the British and New York experience with similar procedures, and those cases included claims against a government. See Hearing on Legislation Recommended by the American Bar Ass'n Before the House Comm. on the Judiciary, 67th Cong., 2d Sess., ser. 25, at 10 (1922) (testimony of A.B.A. witness H. W. Taft); 69 Cong. Rec. 1687, 2029 (1928) (remarks of Representatives Celler and La Guardia). See also Borchard at 854. Third, the Senate report, as already indicated, drew an analogy between Court of Claims money judgments and declaratory judgments when it said, "The decisions of the United States Court of Claims are essentially declaratory in nature * * *." S. Rep.No.1005, 73d Cong.2d Sess. 5 (1934). Fourth, the Committee's reference to the "United States Court of Claims" could be construed as an implicit recognition that the court was to be included in the term "the courts of the United States" as used in the 1934 Act.

On the other side, during a 1925 colloquy on the House floor, Congressman Montague (then chairman of the Judi-

---

30. Hearing on Legislation Recommended by the American Bar Ass'n Before House Comm. on the Judiciary, 67th Cong., 2d Sess., ser. 25 at 5–16 (1922); Hearing on Declaratory Judgments Before House Comm. on the Judiciary, 69th Cong., 1st. Sess., ser. 12 (1926).

31. H.R.Rep.No. 1441, 68th Cong., 2d Sess. (1925); H.R.Rep.No. 928, 69th Cong., 1st Sess. (1926); H.R.Rep.No. 288, 70th Cong., 1st Sess. (1928); H.R.Rep.No. 366, 70th Cong., 1st Sess. (1928); H.R. Rep.No. 94, 71st Cong., 1st Sess. (1929); H.R.Rep.No. 627, 72d Cong., 1st Sess. (1932); H.R.Rep.No. 1264, 73d Cong., 2d Sess. (1934).

32. 66 Cong.Rec. 408–11, 4874 (1925); 67 Cong.Rec. 9546 (1926); 69 Cong.Rec. 1680–88, 2025–32 (1928); 75 Cong.Rec. 14091 (1932); 76 Cong.Rec. 697–98 (1932); 78 Cong.Rec. 8224 (1934).

33. 67 Cong.Rec. 9546 (1926); 69 Cong. Rec. 2032 (1928); 76 Cong.Rec. 697–98 (1932); 78 Cong.Rec. 8224 (1934).

34. Hearings on Declaratory Judgments Before a Subcommittee of the Senate Committee on the Judiciary, 70th Cong., 1st Sess. (1929).

35. S.Rep.No. 1005, 73d Cong., 2d Sess. (1934).

36. See 78 Cong.Rec. 10564–65, 10919 (1934).

ciary Committee) stated that the "act applies to Federal district courts and the courts of the District of Columbia." 66 Cong.Rec. 4874 (1925). Further, according to Williams v. United States, 289 U.S. 553, 53 S.Ct. 751, 77 L.Ed. 1372 (1933), the Court of Claims was not a constitutional (Article III, Section 2) court; [37] the Congressional concern with the constitutionality of the Act was phrased entirely in terms of the consistency of the procedure with the exercise of Article III judicial power; since no reference was made to the difference in constitutional problems with respect to legislative courts, a tenuous argument could be drawn that the Congress did not intend to include such courts. For a discussion of constitutionality, see, e. g., Hearings on Declaratory Judgments Before a Subcommittee of the Senate Comm. on the Judiciary, 70th Cong., 1st Sess. 61-81 (1929) (testimony of Representative Denision and memorandum of Professor Borchard).

Individually and collectively these scattered excerpts and thin inferences fail to provide a sound foundation for concluding that Congress either did or did not intend to authorize the granting of declaratory relief by the Court of Claims. The truth seems to be that the issue simply was not within the express legislative contemplation.[38]

Scant attention has been paid by the secondary legal authorities to this precise question of Congressional intent. Most merely report and accept as law Twin Cities and its offspring. See, e. g., 6A J. Moore's Federal Practice, ¶ 57.02[4],

at 3011 & nn. 8-9 (2d ed. 1966); Developments in the Law—Declaratory Judgments, 62 Harv.L.Rev. 787, 824 n. 284 (1949). However, Professor Edwin Borchard, who was the chief extra-Congressional sponsor of the federal Act,[39] said in his treatise that the statute does not permit declarations "outside the terms of the Tucker Act" but does authorize such judgments "within the permitted limits" of the Tucker Act. Borchard at 373. We understand this to mean that he disputed any assertion that declaratory relief may never be granted in Tucker Act suits. He seemed to interpret *Twin Cities* and other such decisions as holding only that declaratory judgments are unavailable in cases otherwise nonjusticiable or outside the general jurisdiction of this court.

2. The 1948 revision and codification of the Judicial Code added a new Section 451 expressly including the Court of Claims in the term "court of the United States" as used in Title 28. Act of June 25, 1948, ch. 646, § 451, 62 Stat. 869, 907 (now 28 U.S.C. § 451 (1964)). Since the Declaratory Judgment Act, as revised, allows "any court of the United States" to grant declaratory relief, the 1948 Code undeniably indicates, if its phrasing is taken at face value, that the Court of Claims possesses the power to issue a declaratory judgment.

The hearings, reports, and floor debates preceding the 1948 enactment show no recognition that Section 451 has that result, whether the effect be repetition of, or clarification of, or change in the

37. But, as mentioned above, the asserted legislative status of the Court of Claims did not prevent the Supreme Court from terming it "a court of the United States". Ex parte Bakelite Corp., supra, 279 U.S. at 455, 49 S.Ct. at 415.

38. The 1935 amendment (Revenue Act of 1935, ch. 829, § 405, 49 Stat. 1014, 1027) excluding disputes "with respect to taxes" provides even less guidance in determining the scope of the Act in non-tax matters. See S.Rep.No. 1240, 74th Cong., 1st Sess. 11 (1935); H.R.Rep.No. 1885, 74th Cong.,

1st Sess. 13 (1935); 79 Cong.Rec. 13227-28 (1935); 13 Tax Magazine 539 (1935) (reprinting the Justice Department's memorandum suggesting the change); Borchard at 850-57.

39. See, e. g., H.R.Rep. 1264, 73d Cong., 2d Sess. 2 (1934); 69 Cong.Rec. 1687 (1928) (remarks of Representative Celler); Hearings on Declaratory Judgments Before a Subcommittee of the Senate Comm. on the Judiciary, 70th Cong. 1st Sess. 15-22, 70-81 (1929) (testimony and statement of Professor Borchard).

1934 Act.[40] Nor is there evidence of an intent to ratify or overturn the prior judicial construction of the term "court of the United States" as used in the Declaratory Judgment Act.[41] Compare Western Pac. R. R. v. Western Pac. R. R., 345 U.S. 247, 253–257, 73 S.Ct. 656, 97 L.Ed. 986 (1953).

 The reviser's notes, which are an authoritative aid for statutory construction (Western Pac. R. R. v. Western Pac. R. R., supra, 345 U.S. at 254–255, 73 S.Ct. 656), do not refer to the Court of Claims or to the Tucker Act in the comments on Sections 2201–02 (the Declaratory Judgment Act), and they state only that Section 451 was "inserted to make possible a greater simplification in consolidation of the provisions of this title" 28 U.S.C. at 5913, 6026–27 (1964). This notation, though persuasive, does not, in itself, demonstrate that a clarification or change was not made in existing law. It is true that, in the preparatory stages of the 1948 codification, "great care [was] taken to make no changes in existing law which would not meet with unanimous approval." S.Rep.No.1559, 80th Cong., 2d Sess. 2 (1948). However, for the reasons stated in Parts III and IV of this opinion, we do not think that a change, if any, made by Section 451 would be considered controversial. Compare, e. g., Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 227–228, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); Western Pac. R. R. v. Western Pac. R. R., supra, 345 U.S. at 256–257, 73 S.Ct. 656; United States v. National City Lines, 337 U.S. 78, 80–84, 69 S.Ct. 955, 93 L.Ed. 1226 (1949); Ex Parte Collett, 337 U.S. 55, 61–71, 69 S.Ct. 944, 959, 93 L.Ed. 1207 (1949). By far the most likely rea-

son for the lack of further comment on Section 451 is that the drafters assumed that it merely restated the obvious and accepted meaning, in all contexts, of the phrase "court of the United States".

*3.* We are left with the clear statement in the 1948 revision that the Court of Claims is automatically included in the enabling clause of the Declaratory Judgment Act, set against a backdrop of comparable phraseology in the 1934 Act that seems literally to include the court but had been construed in favor of exclusion (without Congressional awareness of that interpretation). Because of our disagreement with the premises of *Twin Cities* (see Parts III and IV, supra), we read the original 1934 Act as adequately authorizing the court to render declaratory judgments. But we note, in connection with the 1948 revision, that in circumstances even less compelling the Supreme Court has held that "[t]he revised form * * * is to be accepted as correct, notwithstanding a possible discrepancy" with the pre-existing legislation. Continental Cas. Co. v. United States, 314 U.S. 527, 530, 62 S.Ct. 393, 395, 86 L.Ed. 426 (1942); see United States v. Bowen, 100 U.S. 508, 513, 25 L.Ed. 631 (1879). On both bases, we shall no longer follow *Twin Cities*.

## VI

 Having concluded that the court is empowered to issue declaratory judgments, we turn to the second question now before us: the applicability of this procedure to Colonel King's claim that, by the capricious action of the Secretary of the Army, he was retired for longevity rather than physical disability and that his records should have been cor-

---

40. See Hearings on H.R. 3214 Before a Subcomm. of the Senate Comm. on the Judiciary, 80th Cong., 2d Sess. (1948); Hearings on Revisions of Titles 18 and 28 of the United States Code Before Subcomm. No. 1 of the House Comm. on the Judiciary, 80th Cong., 1st Sess. (1947); S.Rep.No. 1559, 80th Cong., 2d Sess. (1948); H.R.Rep.No. 308, 80th Cong., 1st Sess. (1947). The House and Senate debates are reprinted in U.S.Code Cong.

Serv., New Title 28—United States Code 1986–2040 (1948).

41. In 1954 Congress made the Act applicable to the district court for Alaska (then a territory) after Reese v. Fultz, 96 F. Supp. 449, 13 Alaska 227 (D. Alaska 1951), had held it inapplicable. Act of Aug. 28, 1954, ch. 1033, 68 Stat. 890. To our knowledge, the Congress has never had its attention called to the *Twin Cities* line of cases.

rected to indicate retirement for the latter.

The Government does not (and could not) intimate at this stage that this is an improper case for declaratory relief under the general rules summarized in Public Serv. Comm'n of Utah v. Wycoff Co., supra, 344 U.S. at 242–243, 73 S.Ct. 236, and Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). Suits for the declaration of a plaintiff's right to have his military records corrected are a relatively common-place occurrence in the federal district courts. See, e. g., Van Bourg v. Nitze, 388 F.2d 557 (C.A.D.C., Oct. 17, 1967) (No. 20,584), and other cases cited note 2 supra.

Nor is there any doubt that the subject matter of the petition is within our jurisdiction. Over the years we have decided innumerable disputes over disability retirement ratings and the actions of military review and record-correction boards.[42] As shown in Part IV supra the present case fits snugly into the traditional class of money claims against the Federal Government. So far as now appears, we hold, this is a proper case in which to consider the award of a declaration. Naturally, we do not preclude the court, if the circumstances as they are developed direct that course,

from ultimately declining a declaration as a matter of discretion.

■ The defendant does contend that this is a suit "with respect to federal taxes" and thus excluded from the Declaratory Judgment Act. Quite obviously the plaintiff is interested in the tax consequences of his retirement rating. But that does not make it an action "with respect to federal taxes." The determination which plaintiff requests is not a determination of his tax liability; the interpretation and application of Int.Rev.Code of 1954, § 104(a) (4) (allowing exclusion of allowances for armed-services connected injuries and sicknesses) is totally irrelevant to the questions he seeks to place before us.[43] See Prince v. United States, supra, 119 F.Supp. at 423–424, 127 Ct.Cl. at 617. The only questions he presents, or need present, relate to his retirement from the Army, and those are the only issues with which this court will treat in its further proceedings in this case. In the circumstances, Colonel King's tax motives have absolutely no bearing on the application of the declaratory remedy. See Stern & Co. v. State Loan & Fin. Corp., 205 F.Supp. 702, 706 (D.Del.1962). Compare Wilson v. Wilson, 141 F.2d 599 (C.A.4, 1944).[44]

---

42. See, e. g., Hutter v. United States, 345 F.2d 828, 170 Ct.Cl. 517 (1965); Merriott v. United States, 163 Ct.Cl. 261 (1963), cert. denied, 379 U.S. 838, 85 S. Ct. 76, 13 L.Ed.2d 45 (1964); Egan v. United States, 158 F.Supp. 377, 141 Ct. Cl. 1 (1958); Friedman v. United States, 158 F.Supp. 364, 141 Ct.Cl. 239 (1958); Capps v. United States, 137 F.Supp. 721, 133 Ct.Cl. 811 (1956); Lemly v. United States, 75 F.Supp. 248, 109 Ct.Cl. 760 (1948), and cases cited.

43. There is no question that § 104(a) (4) of the Internal Revenue Code would exempt his retirement pay from income tax if he were held retired for disability. Freeman v. United States, 265 F.2d 66 (C.A.9, 1959); McNair v. Commissioner of Internal Revenue, 250 F.2d 147 (C.A. 4, 1957); Prince v. United States, supra, 119 F.Supp. 421, 423–424, 127 Ct.Cl. 612, 617; Treas.Reg. § 1.104–1(e).

44. In Stern & Co. the plaintiff sought a judgment declaring that the defendant had breached its contract to purchase plaintiff's stock by allocating an excessive portion of the purchase price to plaintiff's covenants not to compete. The Commissioner of Internal Revenue, on the basis of defendant's allocation, had reopened plaintiff's income tax returns and asserted that that portion of the sales price constituted ordinary income. Although the court stayed the suit pending proceedings in the Tax Court, it held the tax motives irrelevant because the breach could be determined by reference solely to the contract and because a determination of the propriety of the allocation with respect to the contract would not bind the Commissioner in determining the issue with respect to the tax laws. Subsequently the plaintiff received an order of nonliability from the Tax Court and returned to the district court, where he suc-

Defendant's motion to dismiss the petition is denied. Plaintiff is granted permission to amend his petition, within 30 days of the date hereof, to seek explicitly a declaration of his right to be retired for disability and to have his military records changed. The case is then to be returned to the trial commissioner for further proceedings on the prayer for declaratory relief.

ceeded in obtaining damages for breach of contract. See Stern & Co. v. State Loan & Fin. Corp., 238 F.Supp. 901 (D. Del. 1965).

In contrast to the *Stern* case, *Wilson* involved a suit against four persons (including plaintiff's wife and daughter) allegedly owning interests with him in a business partnership and against the Commissioner of Internal Revenue for a declaration of the interest the supposed partners owned and of the right to have taxes assessed according to the court's determination of the ownership interests. The four private parties did not dispute plaintiff's allegations as to their interests, thus leading the court to the conclusion that the only controversy in the suit was between the plaintiff and the Commissioner over plaintiff's tax liability, clearly a controversy "with respect to federal taxes."